UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

ROBERT J. FRIEDMAN

                      Plaintiff,                         **SUMMONS**

     v.

                                           Index No.: 11 Civ. 03210
                                         (NGG) (JMA)
                                         Date:

SELF HELP COMMUNITY SERVICES, UNITED JEWISH APPEAL, INC., UNITED
JEWISH APPEAL- FEDERATION OF NEW YORK, UNITED JEWISH APPEAL
FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK,  UNITED JEWISH
APPEAL FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK
CHARITABLE FUND, L.L.C., STEPHANIE HAIK, ELISABETH SCHNIEDER,
SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; NEW
YORK CITY HUMAN RESOURCES ADMINISTRATION/DEPARTMENT OF
SOCIAL SERVICES/ ADULT PROTECTIVE SERVICES OF BROOKLYN, BRENDA
PERRY, WILLIAM TAIWO, DENISE BUMBERY, MORRIS FRIEDMAN, PHYLLIS
FRIEDMAN; NEW YORK CITY HEALTH AND HOSPITAL CORPORATION,
CONEY ISLAND HOSPITAL ,UNIDENTIFIED CONEY ISLAND HOSPITAL
PSYCHIATRIC WARD INTAKE COUNSELOR ON DUTY 3/17/2010, JOANNE
ABRAMS, MARY SCHAFER,CONEY ISLAND HOSPITAL PSYCHIATRY CHIEF
OF STAFF, DEVITTE  ELVERSON, M.D., LANCE WINSLOW, PhD., CITY OF NEW
YORK, NEW YORK POLICE DEPARTMENT (NYPD) C/O NYC COMPTROLLER'S
OFFICE, 7 UNIDENTIFIED NYPD POLICE OFFICERS; 2 UNIDENTIFIED
NYCEMS

                                        Defendant (s),
_____x

      To the above named Defendant (s):

**SELF HELP COMMUNITY SERVICES/UJA**
**STEPHANIE HAIK, ELISABETH SCHNIEDER,**
**SVETLANA GITMAN, STEPHANIE ZYLBERBERG,**
**MELISSA GARDONYI;**
**1523 Avenue M,**
**Brooklyn, New York, 11230**

**UNITED JEWISH APPEAL (UJA) FEDERATION OF NEW YORK**
**130 East 59th Street**
**New York, NY 10022**

**NEW YORK CITY HUMAN RESOURCES ADMINISTRATION**
**DEPARTMENT OF SOCIAL SERVICES/**
**ADULT PROTECTIVE SERVICES OF BROOKLYN,**
**BRENDA PERRY,**
**WILLIAM TAIWO,**
**DENISE BUMBERY,**
**16508 88TH Avenue, Jamaica,**
**New York 11432**

**MORRIS FRIEDMAN & PHYLLIS FRIEDMAN**
**67 Tall Oakes Drive,**
**East Brunswick, NJ 08816.**

**CITY OF NEW YORK, NYPD, C/O NYC COMPTROLLER'S OFFICE,**
**7 UNIDENTIFIED NYPD POLICE OFFICERS;**
**2 UNIDENTIFIED NYCEMS;**
**Office of Legal Affairs Claims Division,**
**125 Worth Street, Room #527,**
**New York, NY 10013**

**NEW YORK CITY HEALTH AND HOSPITAL CORPORATION**
**Office of Legal Affairs Claims Division,**
**125 Worth Street, Room #527,**
**New York, NY 10013**

**CONEY ISLAND HOSPITAL**
**JOANNE ABRAMS,**
**MARY SCHAFER,**
**DEVITTE  ELVERSON, M.D.,**
**LANCE WINSLOW, PhD.,**
**2601 Ocean Parkway,**
**Brooklyn, NY 11235**

**You are hereby summoned to answered the verified complaint in this action, and to serve a copy of your answer, or, if the verified complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the state of new York); and in case of your failure to appear or an answer, judgment will be taken against you by default for the relief demanded below within this summons and within the verified complaint.**

Pursuant to CPLR § 305 (b) the Defendant is hereby put on notice and summoned to answer the following causes of action:

(1)     Violation of Title 42 U.S.C. §1983
(2)     Violation of Title 42 U.S.C. §1985
(3)     Violation of Plaintiff's 8th Amendment Right against Cruel, and Unusual and/or Inhumane Treatment or Punishment;
(4)     Procuring an Unlawful Arrest, and/or, False Unlawful Arrest, and/or  False Unlawful Hospitalization; and/or False Unlawful Involuntary Psychiatric Commitment;
(5)     Malicious Prosecution;
(6)     False Imprisonment;
(7)     Intentional Infliction of Emotional Harm/ Preying on Plaintiff's known Sensitivity and/or Disability;
(8)     Violation of Title 42 U.S.C.A. § 12132 Ch. 126, Discrimination;
(9)     Violation of Chapter 6, Article 4 §40-c (1) & (2), Discrimination
(10)    Abuse of Process;
(11)    Violation of HIPPA;
(12)    Negligence Per se;
(13)    Negligence;
(14)    Defamation (Libel and Slander per se);
(15)    Defamation (Libel and Slander per quod);
(16)    Respondeat Superior;
(17)    Negligent Hiring;
(18)    Negligent Supervision/Entrustment;
(19)    Negligent Retention;

Pursuant to CPLR § 305 (b) the Defendant is hereby put on notice that Plaintiff requests that this court enter judgment against Defendant(s) in the sum of:

(1) $150,000,000.00 (One Hundred Fifty Million Dollars);
(2) Together with punitive damages in whatever sum the Court may deem just and proper, and/or;
(3) Whatever other relief that the Court may deem just and proper;
(4) Plus costs, plus interest, plus (statutory and non statutory) attorney's fees.

The Plaintiff demands a jury trial.

Dated: New York, New York                    /s/
           March 14, 2012
                                             _____
                                             Richard D. Borzouye, Esq.
                                             Attorney for the Plaintiff
                                             Robert J. Friedman, JD
                                             The Borzouye Law Firm
                                             14 Wall Street, 20th Floor
                                             New York, New York 10005

(212) 618-1469
(bar code RB 3461)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

ROBERT FRIEDMAN

                              Plaintiff,

                                                                        **COMPLAINT**


                              v.                                        11 Civ. 03210
                                                                        (NGG) (JMA)



SELF HELP COMMUNITY SERVICES/UJA, UNITED JEWISH APPEAL, UNITED
JEWISH APPEAL- FEDERATION OF NEW YORK, UNITED JEWISH APPEAL
FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK,  UNITED JEWISH
APPEAL FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK
CHARITABLE FUND, L.L.C., STEPHANIE HAIK, ELISABETH SCHNIEDER,
SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; NEW
YORK CITY HUMAN RESOURCES ADMINISTRATION/DEPARTMENT OF
SOCIAL SERVICES/ ADULT PROTECTIVE SERVICES OF BROOKLYN, BRENDA
PERRY, WILLIAM TAIWO, DENISE BUMBERY, MORRIS FRIEDMAN, PHYLLIS
FRIEDMAN; NEWYORK CITY HEALTH AND HOSPITAL CORPORATION,
CONEY ISLAND HOSPITAL UNIDENTIFIED CONEY ISLAND HOSPITAL
PSYCHIATRIC WARD INTAKE COUNSELOR ON DUTY 3/17/2010, JOANNE
ABRAMS, MARY SCHAFER,CONEY ISLAND HOSPITAL PSYCHIATRY CHIEF
OF STAFF, DEVITTE  ELVERSON, M.D., LANCE WINSLOW, PhD., CITY OF NEW
YORK, NEW YORK POLICE DEPARTMENT (NYPD) C/O NYC COMPTROLLER'S
OFFICE, 7 UNIDENTIFIED NYPD POLICE OFFICERS; 2 UNIDENTIFIED
NYCEMS

                              Defendant (s),
_____x

        Plaintiff ROBERT J. FRIEDMAN, JD (hereinafter "Plaintiff") says by way of

Complaint against Defendants (hereinafter collectively known as) "Defendant(s), by and

through his attorney, RICHARD D. BORZOUYE, ESQ., as follows:

## PARTIES

1.    Plaintiff is a private individual residing at 539 East Edgewood Street, Apt. 1204, Lansing, Michigan 48911.

2.    Defendant (s), SELF HELP COMMUNITY SERVICES/UJA is duly licensed home health aid and social service not for profit business and is a subsidiary of UJA, with addresses at 1523 Avenue M, Brooklyn, New York, New York 112230; and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018. UNITED JEWISH APPEAL, INC. (UJA), UNITED JEWISH APPEAL- FEDERATION OF NEW YORK, UNITED JEWISH APPEAL FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK, UNITED JEWISH APPEAL FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK CHARITABLE FUND, L.L.C., herein referred to collectively as UJA, is a national and international non-for-profit charitable foundation and philanthropy located at 130 East 59th Street, New York, NY 10022.

3.    Defendant (s), SELF HELP COMMUNITY SERVICES directors, officers and social workers are herein named as individuals and in their official capacities and include but are not limited to the following Defendants:

4.    STEPHANIE HAIK, is herein named as an individual and in her official capacity as a licensed or registered social worker employed by SELF HELP COMMUNITY SERVICES located at Self Help Community Services, 1523 Avenue M, Brooklyn, New York 11230 and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018.

5.    ELISABETH SCHNIEDER, is herein named as an individual and in her official capacity director and as a licensed or registered social worker employed by SELF HELP

COMMUNITY SERVICES located at Self Help Community Services, 1523 Avenue M, Brooklyn, New York 11230 and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018.

6.    SVETLANA GITMAN, is herein named as an individual and in her official capacity supervisor of social workers and as a licensed or registered social worker employed by SELF HELP COMMUNITY SERVICES located at Self Help Community Services, 1523 Avenue M, Brooklyn, New York 11230 and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018.

7.    STEPHANIE ZYLBERBERG, is herein named as an individual and in her official capacity as a licensed or registered social worker employed by SELF HELP COMMUNITY SERVICES located at Self Help Community Services, 1523 Avenue M, Brooklyn, New York 11230 and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018.

8.    MELISSA GARDONYI, is herein named as an individual and in her official capacity as a licensed or registered social worker employed by SELF HELP COMMUNITY SERVICES located at Self Help Community Services, 1523 Avenue M, Brooklyn, New York 11230 and Mr. Elihu Kover, V.P. of the Nazi Victim's Program, 520 8th Ave, New York, NY 10018.

9.    Defendant(s), NEW YORK CITY HUMAN RESOURCES ADMINISTRATION/ DEPARTMENTOF SOCIAL SERVICES/ ADULT PROTECTIVE SERVICES OF BROOKLYN, is a duly licensed government social service agency located at 16508 88TH Avenue, Jamaica, New York 11432, with social workers are herein named as individuals

and in their official capacities and include but are not limited to the following

Defendants:

10.    Defendant (s), NEW YORK CITY HUMAN RESOURCES

ADMINISTRATION/ DEPARTMENT OF SOCIAL SERVICES/ ADULT

PROTECTIVE SERVICES OF BROOKLYN is a duly licensed New York City operated

social service government agency with social workers herein named as individuals and in

their official capacities which include but are not limited to the following Defendants:

11.    BRENDA PERRY, is herein named as an individual and in her official capacity

as a licensed or registered social worker employed by APS OF BROOKLYN located at

16508 88TH Avenue, Jamaica, New York 11432.

12.    WILLIAM TAIWO, is herein named as an individual and in his official capacity

as a licensed or registered social worker employed by APS OF BROOKLYN located at

16508 88TH Avenue, Jamaica, New York 11432.

13.    DENISE BUMBERY, is herein named as an individual and in her official

capacity as a licensed or registered social worker employed by APS OF BROOKLYN

located at 16508 88TH Avenue, Jamaica, New York 11432.

14.    Defendant MORRIS FRIEDMAN is herein named as an individual residing at 67

Tall Oakes Drive, East Brunswick, NJ 08816.

15.    Defendant PHYLLIS FRIEDMAN is herein named as an individual residing at 67

Tall Oakes Drive, East Brunswick, NJ 08816.

16.    Defendants NEW YORK CITY HEALTH AND HOSPITAL CORPORATION, Office of Legal Affairs Claims Division, 125 Worth Street, Room #527, New York, NY 10013

17.    CONEY ISLAND HOSPITAL located at 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000, Psych Ward (718) 616-4375.

18.    CONEY ISLAND HOSPITAL Psychiatric Ward Intake Counselor on duty 3/17/2010: (identity unknown to date), 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000, Psych Ward (718) 616-4375.

19.    CONEY ISLAND HOSPITAL ER Doctors, Nurses and Staff on duty 3/17/2010: (identities unknown to date), 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000.

20.    CONEY ISLAND HOSPITAL Nurse Practitioner, (JOANNE ABRAMS) 2601 Ocean Parkway, Brooklyn, NY 11235, (718) 616-3000.

21.    CONEY ISLAND HOSPITAL Psychiatric Nurse, (MARY SCHAFER) 2601 Ocean Parkway, Brooklyn, NY 11235, (718) 616-3000.

22.    CONEY ISLAND HOSPITAL Psychiatric Ward Doctors, Nurses and Staff on duty 3/17/2010: (identities unknown to date), 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000, Psych Ward (718) 616-4375.

23.    CONEY ISLAND HOSPITAL Psychiatry Chief of Staff, DEVITTE ELVERSON, M.D., 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000, Psych Ward (718) 616-4375.

24.    CONEY ISLAND HOSPITAL Psychologist, LANCE WINSLOW, PhD., 2601 Ocean Parkway, Brooklyn, NY 11235; (718) 616-3000, Psych Ward (718) 616-4375.

25.     Defendants CITY OF NEW YORK, NYPD, C/O NYC COMPTROLLER'S

OFFICE, Claims Division, 125 Worth Street, Room #1225, New York, NY 10013.

26.     Defendants, 7 NYPD Police Officers as individuals and in their official capacities,

(identities unknown to date) on duty 3/17/2010 from the Bensonhurst, 62nd Police

Precinct located at 1925Bath Avenue, Brooklyn, NY 11214.

27.     Defendants 2 NYCEMS Officers, as individuals and in their official capacities, on

duty 3/17/2010, (identities unknown to date) from possibly the Coney Island or

Bensonhurst NYCEMS Station or possibly the 62nd Police Precinct, 1925 Bath  Avenue,

Brooklyn, NY 11214.


**FACTUAL BACKGROUND**

28.     This case ultimately involves a long term plan, scheme, and enterprise to

unlawfully, forcibly, evict the Plaintiff Robert Friedman, from his elderly father's home

without due process of law, by Stephanie Haik, a social worker employed by Self Help

Community Services of Brooklyn New York. By Stephanie Haik falsely placing a

telephone call to the NYCPD 911 emergency phone number without any actual personal

knowledge, and without any actual probable cause, any actual direct evidence, any proper

investigation or any due diligence on the part of Ms. Haik or anyone whatsoever

employed by Self Help Community Services or any other agency involved. To

substantiate a belief that the Plaintiff had either committed or was about to commit a

crime, or was physically or mentally ill, or was an immanent danger to his father, himself

or to the public. Stephanie Haik then went on to convinced the NYPD, EMS and Coney

Island Hospital staff to unlawfully, forcibly, involuntarily, psychiatrically commit the Plaintiff against his will, and without his informed consent, and without any form of medical evidence whatsoever, and without ever having spoken with the Plaintiff to learn exactly what if any, medical and/or psychiatric disorders that the Plaintiff may suffer from.

29.    This 911 call resulted in Stephanie Haik filing a false Police Report by stating that "Robert Friedman was acting out and abusing his father." This statement was absolutely false and defamatory.

30.    In addition upon information and belief, Ms. Haik also lied to the NYC Police Dispatch Officer during her 911 call, when she reported that her location was at the Self Help Community Service's Offices located at 1512 Avenue Z FLR.1 as revealed in the "3/17/2010, "Sprint Report". Although Self Help has multiple offices, it does not have offices at 1512 Avenue Z FLR 1.

31.    As a result of Ms. Haik's call to 911, the Plaintiff, Robert Friedman was falsely arrested, and imprisoned or detained by NYPD Police against his will and without his consent and was falsely and unlawfully and involuntarily psychiatrically committed to the Coney Island Hospital Psychiatric Ward. Where Mr. Friedman was placed in a locked room, within a locked ward that he could not leave unsupervised, and where, the Plaintiff was forcibly and needlessly drugged with antipsychotic drugs, in needles to the Plaintiff's belly by hospital psych ward doctors and staff, using unreasonable physical force, which proximately caused the Plaintiff severe physical and mental injury, pain, suffering, and humiliation on a daily basis, from March 17, 2010, until June 3, 2010.

32.      The Plaintiff in this case, Robert Friedman, is a 44 year old, Caucasian man, who was diagnosed with Turrets Syndrome in his late 30s. The Plaintiff's Turrets Syndrome at times causes the Plaintiff to experience moderate to severe, involuntary, non-volitional ticks, both in his physical gate and movement and in his language and speech.

33.     Because of his disability, Mr. Friedman has been discriminated against his entire life and was looked down upon by most of his immediate family including his mother, father and older brother Morris Friedman.

34.     The Plaintiff's severely senile father Benjamin Friedman, who is now deceased and also was mentally challenged and impaired, and his only brother Morris Friedman, if asked in the past, described the Plaintiff, Robert Friedman, as being severely mentally impaired or schizophrenic. This is false. Upon information and belief, although Mr. Friedman is disabled with Turrets involuntary ticks and their effects, Mr. Friedman is not now, nor has he ever been, psychotic or schizophrenic.

35.     Mr. Friedman was diagnosed with Turrets Syndrome by Neurologist Marc Fineberg, M.D. of South Florida Neurology Center. Mr. Friedman was not diagnosed with schizophrenia as reported by Stephanie Haik of Self Help.

36.     Although Mr. Friedman does have a disability that at times breaks through as moderate to severe Turret's ticks, he is a personable man with a fairly high IQ, who despite all of the challenges that the Plaintiff deals with on a daily basis, has managed to earn both a college and law school degree. Yet Mr. Friedman is constantly discriminated against every where he goes by many people, including his own family.

37.     Based upon information and belief the Plaintiff's initially believed that, the 911 call was made by the Plaintiff's father's landlord.

38.     Based upon that information, the Plaintiff filed suit against the landlord on 2/25/2011, in the Supreme Court of the State of New York in the County of Kings. The Defendants then answered the Complaint and motioned the Court to remove to Federal Court.

39.     On September 13, 2011 an initial-conference was convened by the Honorable Magistrate Judge Joan Azrack, at which time defense counsel for the two now released Defendants pursuant to General Obligations Law §15-108,  produced a "Sprint Report" which was obtained by defense counsel's private investigator by FOIL.

40.     This "Sprint Report" showed that the 911 call in question which proximately caused the Plaintiff's injuries, was made not by the released Defendants originally named in this action but, was made by a social worker by the name of Stephanie Haik, and the staff of Self Help Community Services of Brooklyn.

41.     Self Help was acting as the Plaintiff's father's home health aid company at the time of this incident. Thus, it was Stephanie Haik and the staff of Self Help that is culpable of making the 911 call in this case.

42.     Plaintiff's counsel possesses the said Sprint Report and other newly discovered evidence, consisting of a written daily business log created by Stephanie Haik dating from 3/27/2008 to 7/18/2011,  describes a plan  and scheme of intentional and/or malfeasant actions taken against the Plaintiff, devised and carried out by Stephanie Haik and the staff of Self Help, to get rid of the Plaintiff by any means necessary, including unlawful forced eviction of the Plaintiff Robert Friedman from his elderly father's home without due process of law, and ultimately included forced or involuntary psychiatric

commitment of the Plaintiff, and a long term or indefinite (for life) institutional confinement.

43.     This plan was carried out by the Stephanie Haik and the staff of the Self Help organization without any actual personal knowledge, actual probable cause, direct evidence, or proper investigation or due diligence whatsoever, and without any form of medical evidence whatsoever, and without ever having spoken with the Plaintiff to learn exactly what, if any, medical and/or psychiatric disorders the Plaintiff may be have been suffering from.

44.     On or about 4/11/2008, the Plaintiff's father, Benjamin Friedman, an 80 year old severely senile, deaf and speech impaired Holocaust survivor, applied for housing and social service benefits from the SELF HELP COMMUNITY SERVICES located at 1523 Avenue M, Brooklyn, New York, New York 112230.

45.     The application was filled out by SELF HELP COMMUNITY SERVICES employee Stephanie Haik and Benjamin Friedman's son Morris Friedman.

46.     In that application process, Morris Friedman, who had not spoken to his brother Robert in decades, told the Self Help social worker, Stephanie Haik, that his brother Robert Friedman had a severe mental impairment. Ms. Stephanie Haik, of SELF HELP COMMUNITY SERVICES, without further investigation then wrote in her intake notes that:" Mr. Benjamin Friedman has 2 sons, and that his son Robert who lives with Mr. Friedman has severe mental impairment (possibly Schizophrenia), and can be unruly by banging on walls, and that Mr. Friedman's was threatened with eviction because of Robert's banging, so "Mr. Benjamin Friedman needs to figure out what to do with his son."

47.     Between the dates of 4/12/2008 and 2/16/2010 for unknown reasons, Mr. Benjamin Friedman's SELF HELP COMMUNITY SERVICES file was either closed or inactive because no notes are entered between those dates.

48.     On 2/16/2010, Ms. Stephanie Haik, of SELF HELP COMMUNITY SERVICES received a telephone call from Phyllis Friedman, Benjamin Friedman's daughter in law (whom the plaintiff had never met), claiming that Mr. Friedman needed to move into an assisted living facility within two weeks due to his inability to care for himself. In Ms. Haik's notes she writes in large bold letters circled "DONOT CALL CLIENT, CALL SON MORRIS ONLY."

49.     On 3/3/2010, Benjamin Friedman called Stephanie Haik, social worker with SELF HELP COMMUNITY SERVICES because, he was concerned that is 41 year old son Robert Friedman, could not afford to pay the rent on his apartment in New Jersey any longer and would have no place to live.

50.     On 3/8/2010 Stephanie Haik met with Benjamin Friedman at her office. He told Ms. Haik that he was there because he was concerned that is 41 year old son Robert Friedman, could not afford to pay the rent on his apartment and would be homeless. Ms. Haik then told Mr. Friedman that she would find out where his son can go. Ms. Haik then discussed New York City Adult Protective Services (APS) with Mr. Friedman and gave Mr. Friedman the telephone number, explaining that because Robert was not her client that she could not call APS for Mr. Friedman to help his son find a place to live without his son's consent.

51.     On 3/11/2010 Stephanie Haik of SELF HELP COMMUNITY SERVICES called APS without authorization from Benjamin Friedman or Robert Friedman and requested a return phone call from APS Senior Supervisor Brenda Perry.

52.     On 3/11/2010, Brenda Perry Senior Supervisor of APS Brooklyn called Stephanie Haik of SELF HELP COMMUNITY SERVICES and stated that "her client Benjamin Friedman should be willing to take out a warrant on his son to get him placed. Client needs to call the Police. The Police can have the son hospitalized and evaluate him and have him placed in an assisted living facility from there."

53.     On 3/12/2010, Ms. Stephanie Haik, of SELF HELP COMMUNITY SERVICES received another telephone call from Phyllis Friedman, Benjamin Friedman's daughter in law, claiming that, Mr. Benjamin Friedman was at a crisis point because his son Robert came back to stay with Mr. Friedman, but that Mr. Friedman needed to move into an assisted living facility because he could no longer care for himself.

54.     On 3/14/2010, the Plaintiff, Robert Friedman (an adult) arrived at the home of his 83 year old severely senile father, Benjamin Friedman as an overnight guest.

55.     The Plaintiff took a shower upon arriving and due to the age of the plumbing in the bathroom, water from the shower seeped through the tile floor and soaked the down stairs neighbor's bathroom. The neighbor then rang the door bell to complain and then left.

56.     On 3/15/ 2010 the Plaintiff's father's landlord rang the doorbell of Plaintiffs' father's apartment.

57.      Upon information and belief, upon hearing the door bell, the Plaintiff's father opened the door at which time the Plaintiff's father's landlord told the Plaintiff "you must

be out of your father's apartment in two days." He then stated "if you're still here on Thursday see what happens."

58.     On 3/15/2010, Ms. Stephanie Haik, of SELF HELP COMMUNITY SERVICES received a telephone call from, Benjamin Friedman requesting information on what could be done to help his old son Robert Friedman, find an apartment because he was banging a lot and caused bathwater to tickle down to the downstairs neighbor's apartment. Stephanie Haik then told Mr. Friedman that APS was his only option and then offered call APS for Mr. Friedman. Mr. Friedman then asked Ms. Stephanie Haik to wait one day. Ms. Haik then asked Mr. Friedman why he wanted to wait a day?  He then told her that he wanted to talk to his son Morris first.

59.     However, although Ms. Haik was told by Mr. Friedman not to call APS on 3/15/2010, Ms. Stephanie Haik had already called Senior APS Supervisor Brenda Perry on 3/11/2010 without client authorization or consent.

60.     On 3/16/2010, Ms. Stephanie Haik, of SELF HELP COMMUNITY SERVICES received yet another telephone call from, Benjamin Friedman requesting information on what could be done to help his son Robert Friedman, find an apartment.

61.     On 3/16/2010, Stephanie Haik, of SELF HELP COMMUNITY SERVICES received another telephone call from Phyllis Friedman, Benjamin Friedman's daughter in law, claiming that, Mr. Benjamin Friedman was at a crisis point because his son Robert came back to stay with Mr. Friedman, but that Mr. Friedman needed to move into an assisted living facility because he could no longer care for himself.

62.     On 3/16/2010 Stephanie Haik of SELF HELP COMMUNITY SERVICES called APS twice at the suggestion of Stephanie Zylberberg, a SELF HELP employee, and

referred Robert Friedman to APS, at which time she was given an APS case #: 5783642 and was assigned to APS case worker Denise Bumbery. During this conversation Ms. Haik spoke with APS social worker Ms. Callwood, who confirmed that Ms. Bumbery would visit Mr. Friedman's home within 72 hours of that telephone call.

63.    On 3/17/ 2010, the Plaintiff while still an overnight guest in his father's home woke up at approximately 9:35 am.

64.    Upon getting out of bed the Plaintiff walked from his room to the bathroom.

65.    He then exited the bathroom and went into the kitchen expecting to see his father. When he did not see his father he walked into the living room again to no avail and then walked to his father's bedroom door which was unusually locked. He lightly knocked on the door calling to his father, who is deaf. When his father did not answer him, the Plaintiff began to knock harder calling to his father in a loud voice. His father did not answer him and the son became frightened for his father's safety. The Plaintiff then began to knock harder calling to his father.

66.    On 3/17/2010, at approximately 9:40, (Stephanie Haik writes in her notes): that she received a "telephone call from client, allegedly was shouting and saying "Stephanie I need you, said son is banging on door."

67.    On 3/17/2010, at approximately 9:44 am Stephanie Haik of Self Help called the New York City Police 911 emergency telephone number, and reported that Mr. Robert Friedman was acting out against his elderly father. This statement was false.

68.    A few minutes later 7 NYPD Police Officers and 2 NYCEMS workers rang the Plaintiff's father's doorbell.

69.    Upon information and belief, they were there based on a call to NYPD's 911 phone number falsely claiming that the Plaintiff had been acting out, and abusing his father. These accusations were totally false.

70.    Upon hearing the door bell the Plaintiffs' 85 year old, senile father opened his apartment door at which time the Police entered his apartment.

71.    The Police then saw holes in a wall near the Plaintiff's father's bedroom door that were there for years.

72.    The Police then began to interrogate the Plaintiff. The NYPD Officers then insist that the Plaintiff go with them.

73.    The Plaintiff then repeatedly explained to the Police that "he has a disability known as "Turrets Syndrome" and that the holes in the wall were made three to five years before.

74.    The Plaintiff then explained to the Police that he has never physically assaulted or abused his father in any way whatsoever.

75.    The Police then told the Plaintiff that "they were taking him to a hospital for an interview."

76.    The Police did not give a reason why the Plaintiff was being taken to Coney Island Hospital Psych Ward for an interview.

77.    The Police did not formally arrest the Plaintiff for a crime, nor was the Plaintiff ever officially charged with a crime by Police, not read his Miranda rights but yet was taken and in their custody and not free to leave.

78.    The Police did not possess any arrest warrants, search warrants or commitment warrants whatsoever before or after the arrest.

79.     The Plaintiff was brought to Coney Island Hospital's ER where the Plaintiff was interviewed by a Coney Island Hospital Psych Ward Intake Counselor.

80.     The Counselor under information and belief then told the Plaintiff that she was committing him because "of the 911 report to the Police that the Plaintiff had been acting out and abusing his father."

81.     The Plaintiff then told the Intake Counselor and Hospital Staff that "he had 'Turrets Syndrome' and that he had never abused his father, and he was not a danger to his father, himself or the public."

82.     The Plaintiff then refused to give his consent to be treated by the hospital, its doctors or its staff and refuse to be committed to the hospital psych ward.

83.     The Plaintiff was then forced to strip to his underwear by hospital staff. The Plaintiff was then forcibly drugged by hospital staff with antipsychotic drugs in needles to the Plaintiff's belly.

84.     The Plaintiff was then taken to the hospital psychiatric ward and was placed in a locked room within a locked ward that he could not leave unsupervised from March 17, 2010 until June 3, 2010.

85.     The Plaintiff was forcibly drugged with antipsychotic drugs in needles to the Plaintiff's belly, by hospital psych ward doctors and staff, using unreasonable physical force which proximately caused the Plaintiff physical injury and pain and suffering on a daily basis from March 17 2010 until June 3, 2010.

86.     The Plaintiff complained daily that he was being held without his consent and against his will and that he was being forcibly medicated without his consent.

87.    The Plaintiff was released conditionally on his own recognizance from Coney Island Hospital's Psych Ward June 3, 2010.

88.    He was unlawfully drugged with antipsychotic drugs without his consent right up until the very last minute of his unlawful commitment.

89.    The Plaintiff on a daily basis was made fun of, embarrassed and humiliated by the hospital and hospital psych ward staff.

90.    The Plaintiff was mentally and physically disabled for months after his release and still experiences constant anxiety, humiliation, depression, fear and physical and emotional pain.

91.    As a condition of his release the Plaintiff was ordered by the Mental Hygiene Court to leave New York and to relocate to South Carolina against his will. The Plaintiff was also told by Coney Island Hospital psychiatric doctors that they would release the Plaintiff from his unlawful psychiatric commitment if he promised to move to Israel. However, that offer was rescinded upon the doctors learning that the Plaintiff did not hold a valid passport.

92.    The Plaintiff was also ordered to seek out patient psychiatric treatment at his own expense.

93.    In addition, APS employee William Taiwo unlawfully swore out an Order of Protection without client consent and without any actual personal knowledge whatsoever, and without any direct evidence nor any probable cause whatsoever that the Plaintiff had actually committed elder abuse or that the Plaintiff was actually acting out against his father or anyone else.

94.    The Plaintiff was then ordered by the Mental Hygiene Court pursuant to the Stay Away Order to stay away from his 85 year old senile father, who is now deceased and who the Plaintiff was only permitted to see once, while in a coma, before his death.

95.    In this case, as stated above, Plaintiff's counsel possesses newly discovered evidence consisting of a Sprint 911 Telephone Report and a written daily business log, created by social worker Stephanie Haik, of Self Help Community Services of Brooklyn, with dates ranging from 3/27/2008 to 7/18201, which describes a malicious plan and scheme which included forced unlawful eviction of the Plaintiff from his father's home, and involuntary psychiatric commitment of the Plaintiff if necessary, as well as a long term or indefinite (for life) institutional confinement in order to rid Stephanie Haik, her client Benjamin Friedman, Self Help, its affiliate companies and agencies of the Plaintiff as a liability and inconvenience.

96.    In addition, with the Plaintiff safely out of the way, Self Help and its affiliate companies could place the Plaintiff's father in a nursing home (which would then be paid for by Social Security, Medicare and Medicaid), without having to obtain the Plaintiff's consent for such drastic action, and without having to provide social or housing services whatsoever, to the Plaintiff.

97.    This plan was carried out by the Stephanie Haik and the staff of the Self Help without any actual probable cause whatsoever, and without any form of direct physical evidence of any form of abuse, whatsoever, of Benjamin Friedman, or anyone else, on the part of Mr. Robert Friedman, and without any medical evidence whatsoever, and without ever having spoken with the Plaintiff whatsoever, to learn exactly what, if any, medical

and/or mental or psychiatric problems or disorders the Plaintiff may have been suffering from.

98.    This 911 call was made by Stephanie Haik without her client Benjamin Friedman's consent and against his wishes, and without any standing whatsoever.

99.    In addition social worker Stephanie Haik of Self Help did file a false Police Report that Robert Friedman was acting out and abusing his father without any actual personal knowledge and without any actual probable cause to believe that the Plaintiff Robert Friedman had committed a crime or was about to commit a crime, or was physically or mentally ill, or was an immanent danger to his father, himself or the public.

## AS FOR A FIRST CAUSE OF ACTION

**Violation of TITLE 42 U.S.C. §1983 as to NEW YORK CITY POLICE DEPARTMENT (NYPD) CITY OF NEW YORK; NEW YORK CITY HUMAN RESOURCES ADMINISTRATION/ DEPARTMENT OF SOCIAL SERVICES /ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, CITY OF NEW YORK, NYPD, NYC EMS, 2 UNKNOWN EMTS; NEW YORK CITY HEALTH & HOSPITAL CORP., CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

1.    The Plaintiff realleges the allegations 1-99 contained herein the Verified Complaint, as if fully set forth herein.

2.    At all pertinent times, defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

3.    Plaintiff Robert J. Friedman brings this action against, and its individual police officers and supervisors of the NYPD, social workers and supervisors of the New

York City Human Resources Administration/ Department of Social Services/ New York City Adult Protective Services, and its individual APS social workers, and 7 unidentified individual police officers, supervisors, and the 62nd  Precinct Police Department, NYEMS and 2 unidentified individual EMT workers and Coney Island Hospital and staff and 2 individual nurses and 2 individual doctors for damages arising out of a false arrest, false imprisonment, malicious prosecution and false psychiatric commitment, and forced drugging, as well as other unconstitutional policies and actions, and common law claims arising out of an unlawful arrest, detention and psychiatric commitment by defendants NYPD Police, NYEMS and New York City Health & Hospital Corp. and Coney Island Hospital on 3/17/2010.

### Jurisdiction

4.      Plaintiff brings this action against defendants to redress the deprivation of rights secured to the plaintiff by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the common law.

5.      Plaintiff is a citizen of Michigan. Each defendant is, upon information and belief, a citizen of New York. The matter in controversy exceeds $75,000.00.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a) (3), and 42 U.S.C. § 1983.

7.      Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

9.      Upon information and belief, as a result, the Plaintiff has been damaged in the amount of $10,000,000, plus attorney's fees, plus costs for this the first cause of action.

## AS FOR A SECOND CAUSE OF ACTION

**Violation of TITLE 42 U.S.C. §1985 (3) (c) as to the CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT (NYPD); NEW YORK CITY HUMAN RESOURCES ADMINISTRATION/NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT,  2 UNIDENTIFIED NYC EMS EMTS; NEW YORK CITY HEALTH & HOSPITAL CORP., CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

10.      The Plaintiff realleges the allegations 1-99 contained herein the Verified Complaint, as if fully set forth herein.

11.      Plaintiff Robert J. Friedman brings this action against officers as well as supervisors of the NYPD, and individual social workers and supervisors in the New York City Human Resources Administration, Department of Social Services/New York City Adult Protective Services, and its individual APS social workers; and 7 unidentified individual police officers, supervisors, and the 62nd  Precinct Police Department, NYEMS and  2 unidentified individual EMT workers; and Coney Island Hospital and its staff and 2 individual nurses and 2 individual doctors for damages arising out of a conspiracy to violate the Plaintiff's constitutional rights.

12.      Which resulted in the Plaintiff's false arrest, false imprisonment, malicious prosecution and false psychiatric commitment and forced drugging, as well as

other unconstitutional policies and actions, and common law claims arising out of an

unlawful arrest, detention and psychiatric commitment by defendants NYPD Police,

NYEMS and Coney Island Hospital on 3/17/10. At all pertinent times, defendants acted

under color of law, of a statute, ordinance, regulation, custom, or usage.

### Jurisdiction

13.    Plaintiff brings this action against defendants for conspiracy to violate the

Plaintiff constitutional rights and to redress the deprivation of rights secured to the

plaintiff by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United

States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985 **(3) (c)**  and the common law.

14.    Plaintiff is a citizen of Michigan. Each defendant is, upon information and

belief, a citizen of New York. The matter in controversy exceeds $75,000.00.

15.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331,

1332, and 1343(a) (3); 42 U.S.C. § 1983 and 42 U.S.C. § 1985 (3) (c).

16. Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's

state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367

as the common law claims form part of the same case or controversy.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

18.    Here the above named Defendants consisting of two or more persons in

New York State or Territory conspired and went on the premises of Plaintiff, Robert J.

Friedman an over night guest, for the purpose of depriving, directly and indirectly, the

Plaintiff, a member of a class of disabled persons of the equal protection of the laws, and

equal privileges and immunities under the laws; this case of conspiracy involved one or

more persons engaged therein who did cause to be done, many malfeasant acts in

furtherance of the object of such conspiracy to unlawfully evict the Plaintiff from his father's home which resulted in a forced involuntary psychiatric commitment of the Plaintiff Robert J. Friedman, whereby the Plaintiff was so injured in his person and property, and deprived of having and exercising his rights and privileges as a citizen of the United States, the Plaintiff so injured and deprived that he has an action for the recovery of damages occasioned by such injury and deprivation, against all the above named Defendants conspirators.

19.    Upon information and belief, as a result, the Plaintiff has been damaged in the amount of $10,000,000, plus attorney's fees, plus costs for this the second cause of action.

## AS FOR A THIRD CAUSE OF ACTION

**Violation of PLAINTIFF'S 8TH AMENDMENT RIGHTS AGAINST CRUEL AND INHUMANE TREATMENT as to the CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT (NYPD), NEW YORK CITY DEPARTMENT OF HUMAN RESOURCES/DEPARTMENT OF SOCIAL SERVICES/NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

20.    The Plaintiff realleges the allegations 1-99 contained herein the Verified Complaint, as if fully set forth herein.

21.    The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

23.    Plaintiff Robert J. Friedman brings this action against individual officers and supervisors of the NYPD,  individual social workers and supervisors of the New

York City Adult Protective Services, New York City Human Resources Administration/Department of Social Services and its individual APS social workers; and 7 unidentified individual police officers, supervisors, and the 62nd Precinct Police Department; and NYEMS and 2 unidentified individual EMT workers; and Coney Island Hospital and staff and 2 individual nurses and 2 individual doctors for damages arising out of a violation of Plaintiff's 8th Amendment rights against cruel and inhumane treatment by the above named officials, who acted with deliberate indifference, and have exposed the Plaintiff to an unreasonable risk of harm and the deprivations suffered by the Plaintiff constitute "punishment".

24.     All of which resulted in the Plaintiff's false arrest, false imprisonment, malicious prosecution and false psychiatric commitment and for drugging, as well as other unconstitutional policies and actions, and common law claims arising out of an unlawful arrest, detention and psychiatric commitment by defendants NYPD, NYEMS, New York City Health & Hospital Corp. and Coney Island Hospital on 3/17/2010.

### Jurisdiction

25.     Plaintiff brings this action against defendants for conspiracy to violate the Plaintiff constitutional rights and to redress the deprivation of rights secured to the plaintiff by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985 (3) (c)  and the common law.

26.     Plaintiff is a citizen of Michigan. Each defendant is, upon information and belief, a citizen of New York. The matter in controversy exceeds $75,000.00.

27.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a) (3); 42 U.S.C. § 1983 and 42 U.S.C. § 1985 (3) (c).

28.    Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

29.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

30.    Here the above named Defendants consisting of two or more persons in New York State or Territory conspired and went on the premises of Plaintiff, Robert J. Friedman an over night guest, for the purpose of depriving, directly and indirectly, the Plaintiff, a member of a class of disabled persons of the equal protection of the laws, and equal privileges and immunities under the laws;

31.    This case of conspiracy involved one or more persons engaged therein who did cause to be done, many malfeasant acts in furtherance of the object of such conspiracy to unlawfully evict the Plaintiff from his father's home which resulted in a false arrest, detention and forced involuntary psychiatric commitment and forced drugging of the Plaintiff Robert J. Friedman, whereby the Plaintiff was so injured in his person, and mind, and deprived of having and exercising his rights and privileges as a citizen of the United States, the Plaintiff so injured and deprived that he has an action for the recovery of damages occasioned by such injury and deprivation, against all the above named Defendants conspirators.

32.    Upon information and belief, as a result, the Plaintiff has been damaged in the amount of $10,000,000, plus attorney's fees, plus costs for this the third cause of action.

## AS FOR A FOURTH CAUSE OF ACTION

**Procuring an Unlawful False Arrest and /or Unlawful False Arrest and/or Unlawful False Hospitalization and/or Unlawful False Psychiatric Commitment as to SELF HELP COMMUNITY SERVICES / THE UNITED JEWISH APPEAL, et al; AND SELF HELP SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND NEW YORK CITY ADULT PROTECTIVE SERVICES; AND APS WORKERS: BRENDA PERRY,  AND WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT,  2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

33.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

34.    Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

35.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided

false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

36.     The defendant(s) then had those same false incriminating statements about the Plaintiff given by the NYCPD dispatcher to responding officers which was a determining factor in the officer's decision to make the arrest of Plaintiff.

37.     Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

38.     Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will and without the Plaintiff's informed consent.

39.     Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

40.     Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict

the Plaintiff without due process of law, from his father's apartment because the Plaintiff

has medical and mental disabilities.

  41. Upon information and belief, all proceedings initiated by the Defendant(s)

against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

  42. upon information and belief, the Defendant(s):

    (1) initiated the proceedings against the Plaintiff;

    (2) The proceedings were terminated in favor of the Plaintiff;

    (3) The Defendant(s) lacked probable cause;

    (4) The Defendant(s) maliciously initiated the proceedings against the

Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's

disability.

  43. Upon information and belief, as a result, the Plaintiff has been damaged in

the amount of $5,000,000, plus attorney's fees, plus costs for this the forth cause of

action.


### AS FOR A FIFTH CAUSE OF ACTION

**Malicious Prosecution as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT,  2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

  44. Upon information and belief, all of the herein named Defendants, but

especially STEPHANIE HAIK, a private individual, and licensed social worker

employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

45.     Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

46.     The Defendant(s) then had those same false incriminating statements about the Plaintiff relayed by the NYCPD dispatcher to responding officers which was a determining factor in the officer's decision to make the arrest of Plaintiff.

47.     Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

48.     Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

49.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment and forced drugging of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

50.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict the Plaintiff without due process of law.

51.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

52.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

53.    Upon information and belief, as a result, the Plaintiff has been damaged in the amount of $5,000,000, plus attorney's fees, plus costs for this the fifth cause of action.

<u>**AS FOR A SIXTH CAUSE OF ACTION**</u>

<u>**Unlawful False Imprisonment as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**</u>

54.    The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

55.    Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

56.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided

false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

57.     Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

58.     Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

59.     Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

60.     Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

61.     Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally

instituted proceedings against the Plaintiff, misusing the legal process to illegally evict

the Plaintiff without due process of law, from his father's apartment because the Plaintiff

has medical and mental disabilities.

62.    Upon information and belief, all proceedings initiated by the Defendant(s)

against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

63.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the

Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's

disability.

64.    Upon information and belief, as a result, the Plaintiff has been damaged in

the amount of $5,000,000, plus attorney's fees, plus costs for this the sixth cause of

action.

## AS FOR A SEVENTH CAUSE OF ACTION

**Intentional Infliction of Emotional Harm by Preying on the Plaintiff's known Sensitivities and/or Disabilities as to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPDAND 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT,  AND 2 UNIDENTIFIED NYC EMS EMTS; AND CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

65.    The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

66.    Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

68.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

69.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

70.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

71.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by

affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

72.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

73.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict the Plaintiff without due process of law, from his father's apartment because the Plaintiff has medical and mental disabilities.

74.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

75.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

76.     Upon information and belief, the Defendant(s), STEPHANIE HAIK, a private individual, and licensed social worker and the staff employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, were put on actual notice of the Plaintiff's disabilities by the Plaintiff's father on numerous occasions while discussing his case with the Defendants. The Defendant(s) had actual personal knowledge and knew of all of the Plaintiff's peculiar (subjective) sensitivities due to the Plaintiff's physical and mental disabilities namely "Turrets Syndrome."

77.     Upon information and belief, on March 17 2010, the Plaintiff while still an overnight guest in his father's home woke up at approximately 9:30 am. A few minutes later 7 NYPD Police Officers and 2 NYCEMS workers rang the Plaintiff's father's doorbell. They were there based on STEPHANIE HAIK of SELF HELP illegal call to NYPD's 911 number falsely claiming that the Plaintiff was acting out and abusing his father. These accusations were totally false.

78.     The Plaintiffs' 85 year old, senile father opened his apartment door at which time the Police entered his apartment. The Police then saw holes in a wall near the Plaintiff's father's bedroom door that were there for years. They then began to interrogate the Plaintiff. The NYPD Officers then insist that the Plaintiff go with them.

79.    The Plaintiff then repeatedly explained to the Police that "he has a disability known as "Turrets Syndrome" and that the holes in the wall were made three to five years before.

80.    The Police then demanded that Plaintiff go with them to a hospital for an interview."

81.    The Police did not give a reason why the Plaintiff was being taken to Coney Island Hospital Psych Ward.

82.    The Police did not formally arrest the Plaintiff for a crime. Nor was the Plaintiff ever officially charged with a crime although he was verbally accused by the Defendant(s) and then Police of abusing his 85 year old father. No criminal proceedings whatsoever were ever pursued by Police or the District Attorney. The Police possessed no arrest, search or commitment warrants whatsoever.

83.    The Plaintiff was brought to Coney Island Hospital's ER where the Plaintiff was interviewed by a Coney Island Hospital Psych Ward Intake Counselor. Based upon information and belief, the Counselor then told the Plaintiff that "she was committing him because you've been acting out and abusing your father."

84.    The Plaintiff was then forced to strip to his underwear by hospital staff. The Plaintiff was then forcibly drugged by hospital staff with antipsychotic drugs in needles to the Plaintiff's belly. The Plaintiff was then taken to the hospital psychiatric ward and was placed in a locked room located within a locked ward that he could not leave unsupervised from March 17 2010 until June 3, 2010.

85.    During his commitment the Plaintiff was intentionally threatened, embarrassed, belittled assaulted and humiliated on a daily basis by the hospital staff and

doctors in retaliation for the Plaintiff's refusal of consent to treat him and his constant objections to that treatment.

86.     The Plaintiff was medicated with antipsychotic drugs, by hospital psych ward doctors and staff, using physical force, twice a day from March 17 2010 until June 3, 2010.

87.     Upon information and belief, all proceedings were terminated in the Plaintiff's favor on the merits.

88.     Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or negligently or recklessly but freely, knowingly and voluntarily with malice providing false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 telephone call dated March 17 2010 and made false incriminating statements about the Plaintiff to responding officers which was a determining factor in the officer's decision to make the arrest of Plaintiff.

89.     Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and abusing his elderly father."

90.     Upon information and belief, the Defendant(s) conduct was extreme and outrageous and was beyond the bounds of human decency proximately causing the Plaintiff severe emotional distress and mental disturbance. By the Defendant(s) preying on the Plaintiff's known sensitivity of "Turrets Syndrome" by intentionally or negligently or recklessly, but freely, knowingly and voluntarily providing with malice, false information to the Police.

91.     And then by intentional affirmative direction, persuasion and requests to the Police procured the unlawful false restraint, false confinement, false detention, false arrest and unlawful false imprisonment and unlawful false involuntary psychiatric commitment of the Plaintiff.

92.     Of which the Plaintiff was fully aware, and of which was completely against the Plaintiff's will.

93.     And which was in the absence of reasonable suspicion, probable cause to make an arrest or probable cause to justify involuntary detention resulting in involuntary psychiatric commitment of the Plaintiff or even a chance of prevailing against the Plaintiff.

94.     Upon information and belief, the Plaintiff has been damaged by the Defendant's malevolent intentions, or malfeasant negligence, or reckless disregard of the Plaintiff's interest and therefore the Plaintiff respectfully requests that this most Honorable Court award punitive damages in this case. Also as a result, the Plaintiff has been damaged by the Defendant's intentional, or malfeasant negligent or reckless extreme and outrageous conduct, which was beyond the bounds of human decency, proximately causing the Plaintiff severe emotional harm and mental disturbance, severe embarrassment, severe humiliation and severe physical injury and pain and suffering and therefore the Plaintiff respectfully requests an award in the amount of $5,000,000.00 plus attorney's fees, plus costs for this the seventh cause of action.


### AS FOR A EIGHTH CAUSE OF ACTION

**Violation of Title 42 U.S.C.A. § 12132 Ch. 126: Prohibition of Discrimination by Private Entities and Equal Opportunity for Individuals with Disabilities as to: SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

95.    The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

96.    Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker and the staff employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

97.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

98.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

99.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

100.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by

affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

101.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

102.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict the Plaintiff without due process of law, from his father's apartment because the Plaintiff has medical and mental disabilities.

103.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

104.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

105.    Upon information and belief, the Defendants in violation of Title 42 U.S.C.A. § 12132 Ch. 126; Prohibition of Discrimination by Private Entities and Equal Opportunity for Individuals with Disabilities, discriminated against the Plaintiff's known disability of "Turrets Syndrome" and violated the Plaintiff's rights to due process and equal protection under the law of Title 42 U.S.C.A. § 12132 Ch. 126 and the laws of the State of New York.

106.    When upon information and belief, without probable cause or proper legal Authority to sanction an arrest, the Defendant(s), STEPHANIE HAIK and the staff of SELF HELP and the above named Defendants maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and civil proceedings against the Plaintiff in order to illegally evict the Plaintiff from his father's home without due process of law, because the landlord would not tolerate the Plaintiff's presence due to his physical and mental disabilities.

107.    Upon information and belief, the Defendant(s) STEPHANIE HAIK and the staff of SELF HELP s' conduct is in violation of Title 42 U.S.C.A. § 12132 Ch. 126.

108.    Title 42 U.S.C.A. § 12132 Ch. 126 states: No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages by any person;

109.    Title 42 U.S.C.A. § 12132 Ch. 126 states: It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of

such individual or class, directly or indirectly to a denial of the opportunity which causes injury.

110.    Upon information and belief, the above named Defendant s' conduct was discrimination against the Plaintiff's known disability of  "Turrets Syndrome" and violated the Plaintiff's rights to equal protection under Title 42 U.S.C.A. § 12132 Ch 126 and of the State of New York.

111.    The Defendant 's conduct was malicious, extreme and outrageous beyond the bounds of human decency proximately causing the Plaintiff severe emotional distress and mental disturbance and physical pain and suffering, by the Defendant(s) preying on the Plaintiff's known disabilities and severe sensitivities of "Turrets Syndrome."

112.    As a result, upon information and belief, the Plaintiff has been damaged by the Defendant's intentional, or negligence per se and/or reckless discrimination of the Plaintiff's physical and mental disabilities in violation of Title 42 U.S.C.A. § 12132.

113.    Upon information and belief, the Defendant(s) discriminated against the Plaintiff's known sensitivities and the Plaintiff's known disability of "Turrets Syndrome" and violated the Plaintiff's rights to equal protection under in violation of Title 42 U.S.C.A. § 12132 Ch 126;  and the laws of the State of New York, in violation of Chapter 6.of the Consolidated Laws; Article 4. Equal Rights and Discrimination §40-c (1) & (2), Discrimination, resulting in the Plaintiff's false arrest, false imprisonment and false psychiatric commitment, malicious prosecution, and severe emotional harm and mental disturbance, severe embarrassment, severe humiliation and severe physical injury resulting in severe pain and suffering and therefore the Plaintiff respectfully requests an

award in the amount of $10,000,000.00 plus attorney's fees, plus costs for this the eighth cause of action.

## AS FOR A NINTH CAUSE OF ACTION

**Discrimination in Violation of Chapter 6., Article 4. §40-c (1) & (2), of the Consolidated Laws of the State of New York; Equal Rights and Discrimination Violating Plaintiff's Equal Protection Rights Under the Law of the State of New York as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

114.    The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

115.    Upon information and belief, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment of more than 40 years.

116.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

117.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

118.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

119.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

120.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict

the Plaintiff without due process of law, from his father's apartment because the Plaintiff has medical and mental disabilities.

121.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

122.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

123.    Upon information and belief, the above named Defendants are in violation of Chapter 6., Article 4.of the Consolidated Laws of the State of New York: Equal Rights in Places of Public Accommodation and Amusement §40-c (1) & (2), Discrimination; discriminated against the Plaintiff's known disability of "Turrets Syndrome" and violated the Plaintiff's rights to equal protection under the laws of the State of New York, when upon information and belief,   without proper legal Authority to sanction an arrest, the Defendant(s) maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and civil proceedings against the Plaintiff in order to illegally evict the Plaintiff from his father's home without due process of law, because the landlord would not tolerate the Plaintiff's presence due to his physical and mental disabilities.

124.    Upon information and belief, the Defendants' conduct is in violation of Chapter 6. Article 4, §40-c (1) & (2) of the Consolidated Laws of the State of New York: Equal Rights and Discrimination which state: (1) all persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof; and (2) no person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety two of the executive law, be subject to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of this state.

125.    Upon information and belief, the Defendant(s), STEPHANIE HAIK and the staff of SELF HELP and the above named Defendants had personal knowledge and knew of the Plaintiff's peculiar (subjective) sensitivities due to the Plaintiff's physical and mental disabilities namely "Turrets Syndrome."

126.    Upon information and belief, the Defendants STEPHANIE HAIK and the staff of SELF HELP and the above named Defendants' conduct was discrimination against the Plaintiff's known disability of "Turrets Syndrome" and violated the Plaintiff's rights to equal protection under the laws of the State of New York.

127.    Upon information and belief, the Defendant(s), STEPHANIE HAIK and the staff of SELF HELP and the above named Defendant's conduct was malicious, extreme and outrageous beyond the bounds of human decency proximately causing the Plaintiff severe emotional distress and mental disturbance by the Defendant(s) preying on the Plaintiff's known sensitivities of "Turrets Syndrome."

128.    Upon information and belief, the Defendant(s) conduct was extreme and outrageous beyond the bounds of human decency proximately causing the Plaintiff severe emotional distress and mental disturbance by the Defendant(s) preying on the Plaintiff's known sensitivity of "Turrets Syndrome" by freely, intentionally, knowingly and voluntarily providing false information to the Police.

129.    And by upon information and belief, the Defendant's intentional affirmative direction, persuasion and requests to the Police procured the unlawful restraint, confinement, detention, arrest and unlawful false imprisonment of the Plaintiff of which the Plaintiff was fully aware and which was against the Plaintiff's will as well as the unlawful arrest, detention and involuntary commitment of the Plaintiff in the absence of reasonable suspicion, probable cause to make an arrest or a reasonable chance of prevailing or probable cause to justify involuntary detention resulting in involuntary commitment.

130.    As a result, upon information and belief, the Plaintiff has been damaged by the Defendant's intentional, and/or negligence per se and/or reckless discrimination of the Plaintiff's physical and mental disabilities in violation of Chapter 6.of the Consolidated Laws; Article 4. Equal Rights in Places of Public Accommodation and Amusement §40-c (1) & (2), Discrimination.

131.   Upon information and belief, the Defendant(s) discriminated against the Plaintiff's known sensitivities and the Plaintiff's known disability of "Turrets Syndrome" and violated the Plaintiff's rights to due process and equal protection under the laws of the State of New York, in violation of Chapter 6.of the Consolidated Laws; Article 4. Equal Rights in Places of Public Accommodation, §40-c (1) & (2), Discrimination, resulting in the Plaintiff's false arrest, false imprisonment and false psychiatric commitment, malicious prosecution, and severe emotional harm and mental disturbance, severe embarrassment, severe humiliation and severe physical injury resulting in severe pain and suffering and therefore the Plaintiff respectfully requests an award in the amount of $5,000,000.00 plus attorney's fees, plus costs for this the ninth cause of action.

## AS FOR A TENTH CAUSE OF ACTION

**Abuse of Process as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

132.   The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

133.   Upon information and belief, all of the herein named Defendants including

but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, are guilty of abuse of process and meet the three prong test required to sustain a claim for abuse of process under New York law in that the Defendants: (1) regularly issued process against the Plaintiff for false arrest and civil involuntary psychiatric commitment and forced involuntary drugging; and (2) the Defendants had intent to do harm to the Plaintiff without excuse or justification; and (3) the Defendant's use of process was perverted in manners to obtain a collateral objective. The process was both issued and filed with the Hygiene Court. Process is defined for this purpose as a direction or demand that one perform or refrain from doing some prescribed act.

134.   In this case process issued was capable of being abused by the above named Defendants, and process was in fact abused by the above named Defendants. This cause of action is properly based on abuse of process by the Defendants in order to obtain a warrant of involuntary psychiatric commitment of the Plaintiff Robert J. Friedman as well as to obtain a Court ordered, Order of Protection.

135.   Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the

Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment.

136.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

137.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

138.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

139.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment and forced drugging of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will and without his consent.

140.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to

make an arrest or involuntary detention resulting in involuntary commitment or any

reasonable chance of prevailing.

141.    Upon information and belief, the Defendant(s) for reasons other than to

serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's

rented apartment because the Plaintiff has medical and mental disabilities, illegally

instituted proceedings against the Plaintiff, misusing the legal process to illegally evict

the Plaintiff without due process of law, from his father's apartment because the Plaintiff

has medical and mental disabilities.

142.    Upon information and belief, all proceedings initiated by the Defendant(s)

against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

143.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the

Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's

disability.

144.    Upon information and belief, the Defendant(s), STEPHANIE HAIK, a

private individual, and licensed social worker and the staff employed by SELF HELP

COMMUNUTY SERVICES, a not for profit organization, organized under the laws of

the State of New York, were put on actual notice of the Plaintiff's disabilities by the

Plaintiff's father on numerous occasions while discussing his case with the Defendants.

The Defendant(s) had actual personal knowledge and knew of all of the Plaintiff's

peculiar (subjective) sensitivities due to the Plaintiff's physical and mental disabilities namely "Turrets Syndrome."

145.    Upon information and belief, on March 17 2010, the Plaintiff while still an overnight guest in his father's home woke up at approximately 9:30 am. A few minutes later 7 NYPD Police Officers and 2 NYCEMS workers rang the Plaintiff's father's doorbell. They were there based on STEPHANIE HAIK of SELF HELP illegal call to NYPD's 911 number falsely claiming that the Plaintiff was acting out and abusing his father. These accusations were totally false.

146.    This 911 call was made by STEPHANIE HAIK without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment.

147.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

148.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

149.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal

power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will.

150.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

151.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the legal process to illegally evict the Plaintiff without due process of law, from his father's apartment because the Plaintiff has medical and mental disabilities.

152.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

153.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

154.   As a result, upon information and belief, the Plaintiff has been damaged by the Defendant's intentional, and/or negligence per se and/or reckless abuse of process resulting in the Plaintiff's false arrest, false imprisonment and false psychiatric commitment, malicious prosecution, and severe emotional harm and mental disturbance, severe embarrassment, severe humiliation and severe physical injury resulting in severe pain and suffering and therefore the Plaintiff respectfully requests an award in the amount of $5,000,000.00 plus attorney's fees, plus costs for this the tenth cause of action.

## AS FOR A ELEVENTH CAUSE OF ACTION

**Violation of HIPPA as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

**Violation of §1320d-6: Wrongful disclosure of individually identifiable health information**

155.   (a) Offense

A person who knowingly and in violation of this part--

   **(1)** Uses or causes to be used a unique health identifier;

   **(2)** Obtains individually identifiable health information relating to an individual; or

   **(3)** Discloses individually identifiable health information to another person,

Shall be punished as provided in subsection (b) of this section. For purposes of the

previous sentence, a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part if the information is maintained by a covered entity (as defined in the **HIPAA** privacy regulation described in section 1320d-9(b)(3) of this title) and the individual obtained or disclosed such information without authorization.

156.    (b) Penalties:

A person described in subsection (a) of this section shall:

    **(1)** Be fined not more than $50,000, imprisoned not more than 1 year, or both; and/or

    **(2)** if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and

    **(3)** If the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both.

    157.    Upon information and belief, all of the herein named Defendants, but especially STEPHANIE HAIK, a private individual, and licensed social worker and the staff  employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, without probable cause proper, or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff which resulted in civil arrest and involuntary psychiatric commitment and forced involuntary drugging of the Plaintiff in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment.

158.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or recklessly, knowingly, freely and voluntarily with malice provided false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

159.    Upon information and belief, the Defendant(s) told Police that "the Plaintiff was acting out, and was abusing his elderly father."

160.    Upon information and belief, the Defendant(s) intentionally or recklessly, freely, knowingly and voluntarily with malice, provided false medical and mental health information and by affirmative direction, persuasion, and requests to the Police, which then asserted legal power to procure the unlawful restraint, confinement, detention, imprisonment and eventual psychiatric commitment and forced drugging of the Plaintiff, of which the Plaintiff was fully aware and was against the Plaintiff's will and without his consent.

161.    Upon information and belief, the unlawful arrest, restraint, confinement, detention, imprisonment and eventual psychiatric commitment of the Plaintiff and the subsequent unlawful psychiatric commitment hearings were based upon false information provided by the Defendant(s) without HIPPA consent and in the absence of reasonable suspicion, probable cause to make an arrest or involuntary detention resulting in involuntary commitment or any reasonable chance of prevailing.

162.    Upon information and belief, the Defendant(s) for reasons other than to serve justice, in order to illegally evict the Plaintiff as an overnight guest from his father's rented apartment because the Plaintiff has medical and mental disabilities, illegally instituted proceedings against the Plaintiff, misusing the Plaintiff's medical information

and the legal process to illegally evict the Plaintiff without due process of law, from his father's apartment because the Plaintiff has medical and mental disabilities.

163.    Upon information and belief, all proceedings initiated by the Defendant(s) against the Plaintiff in this case were terminated in the Plaintiff's favor on the merits.

164.    upon information and belief, the Defendant(s):

(1) initiated the proceedings against the Plaintiff;

(2) The proceedings were terminated in favor of the Plaintiff;

(3) The Defendant(s) lacked probable cause;

(4) The Defendant(s) maliciously initiated the proceedings against the Plaintiff to unlawfully evict the Plaintiff from his father's home due to the Plaintiff's disability.

165.    Upon information and belief, the Defendant(s), STEPHANIE HAIK, a private individual, and licensed social worker and the staff employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, were put on actual notice of the Plaintiff's disabilities by the Plaintiff's father on numerous occasions while discussing his case with the Defendants. The Defendant(s) had actual personal knowledge and knew of all of the Plaintiff's peculiar (subjective) sensitivities and medical information including the Plaintiff's Social Security number which is located in STEPHANIE HAIK's notes without the Plaintiff's written consent which is a HIPPA violation in and of its' self.

166.    As a result, upon information and belief, the Plaintiff has been damaged by the Defendant's multiple on going intentional, and/or negligence per se and/or reckless HIPPA violations resulting in the Plaintiff's false arrest, false imprisonment and false psychiatric commitment, malicious prosecution, and severe emotional harm and mental disturbance, severe embarrassment, severe humiliation and severe physical injury resulting in severe pain and suffering and therefore the Plaintiff respectfully requests an award in the amount of $5,000,000.00 plus attorney's fees, plus costs for this the eleventh cause of action.

## AS FOR A TWELFTH CAUSE OF ACTION

**Negligence Per se as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.**

167.    The Plaintiff realleges the allegations 1-99 contained in the Verified Complaint, as if fully set forth herein.

168.    Upon information and belief, the Defendant, Upon information and belief, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, organized under the laws of the State of New York, owed the

Plaintiff, a licensee and visitor on the Defendant's premises, a duty of reasonable care towards others.

169.    Upon information and belief, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the named staff members of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES, a not for profit organization, are liable to the Plaintiff for malfeasance negligence by the Defendant's failure to exercise the standard of care that an ordinary reasonably prudent person would have exercised in a similar situation.

170.    Upon information and belief, in this case, the Defendant's liability for malfeasance negligence does not depend on a special relationship but rather arises from a broad duty to act reasonably to avoid causing harm to others.

171.    Upon information and belief, the Defendant's duty of reasonable care owed to the Plaintiff arose out of the Defendant's malfeasance or out of the Defendant's affirmative act, of which the Defendant(s) breached its duty of care to the Plaintiff, to not cause harm to others.

172.    Upon information and belief, the Defendant(s) acted with malfeasance when the Defendant, upon information and belief, without probable cause or proper legal Authority to sanction an arrest of the Plaintiff, negligently per se initiated, procured the initiation of, and took an active part in the initiation of criminal or civil proceedings which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff, in order to illegally evict the Plaintiff from the Defendant's premises without due process of law, because the Plaintiff has medical and mental disabilities.

173.    Upon information and belief, the Defendants' conduct is in violation of state and federal statute including but not limited to Title 42 U.S.C.A. § 12132; and Chapter 6. Article 4 §40-c (1) & (2) of the Consolidated Laws of the State of New York; Equal Rights and Discrimination which state: (1) all persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof; and (2) no person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety two of the executive law, be subject to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of this state.

174.    Chapter 6 Article 4 §40-c (1) & (2) of the Consolidated Laws of the State of New York; Equal Rights and Discrimination is a statute that sets the standard of conduct by a reasonable person. The statute violated by the Defendant(s) was designed to protect the class of persons in which the Plaintiff is included (which is the disabled) and the type of harm suffered by the Plaintiff which occurred (which is discrimination of the Plaintiff's disability) that in fact occurred as a proximate cause of the Defendant's discriminatory conduct towards the Plaintiff's disability.

175.    Upon information and belief, the Defendant's breach of its duty owed to the Plaintiff, put the Plaintiff in foreseeable risk of harm, and placed the Plaintiff in a "zone of danger" of which the Defendant's malfeasant act proximately caused the Plaintiff substantial damages of physical and mental injury.

176.    Upon information and belief, the Defendant(s) initiated such proceedings by conscious misstatement. By the Defendant(s) consciously misstating the facts to the Police in such a way as to lead the Plaintiff to a place of harm, even though the Defendant may not have, or did not intend such harm, the Defendant has acted unreasonably and is therefore liable for his use of such language by negligently per se providing false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

177.    And then upon information and belief, on the same day, by making those same false incriminating statements and false medical and mental health information about the Plaintiff to responding officers which was a determining factor in the officer's decision to make a false arrest of Plaintiff.

178.    Upon information and belief, the Defendant(s) negligently per se told Police that "the Plaintiff was acting out, and abusing his elderly father", a very serious crime.

179.    Upon information and belief, the Defendant(s) negligently per se provided false information and by affirmative direction, persuasion and requests to the Police procured the unlawful arrest, detention and involuntary psychiatric commitment of the Plaintiff in the absence of reasonable suspicion, probable cause or a reasonable chance of prevailing.

180.    Upon information and belief, the Plaintiff was taken into custody without probable cause or legal Authority to arrest the Plaintiff based on the Defendant(s) negligently per se providing false information to the Police and then by affirmative direction, persuasion and requests to the Police which then asserted legal power to procure the unlawful false arrest, false restraint, false confinement and false imprisonment of the Plaintiff of which the Plaintiff was fully aware, and was completely against the Plaintiff's will.

181.    Upon information and belief, based upon the Defendant's act of malfeasance of providing the Police with false information about the Plaintiff, the Police then proceeded to unlawfully arrest, detain, confine, and imprison which eventually lead the Police to convey that false information to the staff at Coney Island Hospital which proximately caused Coney Island Hospital staff to involuntary psychiatrically commit the Plaintiff in the absence of  probable cause to make an arrest or involuntary detention resulting in involuntary psychiatric commitment or without any chance of prevailing against the Plaintiff.

182.    Upon information and belief, as a result, of the Defendant's malfeasant negligent per se act which breached the Defendant's duty of reasonable care owed to the Plaintiff and proximately caused the Plaintiff substantial physical and mental injury, resulting in the Plaintiff's severe physical pain and suffering, severe emotional, and mental injury and disturbance, as well as severe embarrassment, and severe humiliation and therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00 plus attorney's fees, plus costs for this the twelfth cause of action.

## AS FOR A THIRTEENTHCAUSE OF ACTION

### Negligence as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPDM, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD.

183.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

184.    Upon information and belief, the Defendant, STEPHANIE HAIK, an individual social worker and SELF HELP COMMUNITY SERVICES, a not for profit, owed the Plaintiff a duty of reasonable care towards others.

185.    Upon information and belief, the Defendant, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker

employed by SELF HELP COMMUNUTY SERVICES are liable to the Plaintiff for malfeasance negligence by the Defendant's failure to exercise the standard of care that an ordinary reasonably prudent person would have exercised in a similar situation.

186.    Upon information and belief, in this case, the Defendant's liability for malfeasance negligence does not depend on a special relationship but rather arises from a broad duty to act reasonably to avoid causing harm to others.

187.    Upon information and belief, the Defendant's duty of reasonable care owed to the Plaintiff arose out of the Defendant's malfeasance or out of the Defendant's affirmative act, of which the Defendant(s) breached its duty of care to the Plaintiff, to not cause harm to others.

188.    Upon information and belief, the Defendant(s) acted with malfeasance when the Defendant, upon information and belief, without probable cause or proper legal Authority to sanction an arrest of the Plaintiff, negligently initiated, procured the initiation of, and took an active part in the initiation of criminal or civil proceedings which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff, in order to illegally evict the Plaintiff from the Defendant's premises because the Plaintiff has medical and mental disabilities.

189.    Upon information and belief, the Defendant's breach of its duty owed to the Plaintiff put the Plaintiff in foreseeable risk of harm, and placed the Plaintiff in a "zone of danger" of which the Defendant's malfeasant act proximately caused the Plaintiff substantial damages of physical and mental injury.

190.    Upon information and belief, the Defendant(s) initiated such proceedings by conscious misstatement. By the Defendant(s) consciously misstating the facts to the Police in such a way as to lead the Plaintiff to a place of harm, even though the Defendant may not have, or did not intend such harm, the Defendant has acted unreasonably and is therefore liable for his use of such language by negligently providing false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010.

191.    And then upon information and belief, on the same day, by making those same false incriminating statements about the Plaintiff to responding officers which was a determining factor in the officer's decision to make a false arrest of Plaintiff.

192.    Upon information and belief, the Defendant(s) negligently told Police that "the Plaintiff was acting crazy, and abusing his elderly father."

193.    Upon information and belief, the Defendant(s) negligently provided false information and by affirmative direction, persuasion and requests to the Police procured the unlawful arrest, detention and involuntary psychiatric commitment of the Plaintiff in the absence of reasonable suspicion, probable cause or a reasonable chance of prevailing.

194.    Upon information and belief, the Plaintiff was taken into custody without probable cause or legal Authority to arrest the Plaintiff based on the Defendant(s) negligently providing false information to the Police and then by affirmative direction, persuasion and requests to the Police which then asserted legal power to procure the unlawful arrest, restraint, confinement and imprisonment of the Plaintiff of which the Plaintiff was fully aware and was completely against the Plaintiff's will.

195.    Upon information and belief, based upon the Defendant's act of malfeasance of providing the Police with false information about the Plaintiff, the Police then proceeded to unlawfully arrest, detain, confine, imprison and which eventually lead the Police to convey that false information to the staff at Coney Island Hospital which proximately caused Coney Island Hospital staff to involuntary psychiatrically commit the Plaintiff in the absence of a psychiatric commitment hearing,  probable cause to make an arrest or involuntary detention resulting in involuntary psychiatric commitment and without any chance of prevailing against the Plaintiff.

.    196.    Upon information and belief, as a result, of the Defendant's malfeasant negligent act which breached the Defendant's duty of reasonable care owed to the Plaintiff and created foresee ably risk, placing the Plaintiff in an extreme "zone of danger" and proximately caused the Plaintiff substantial physical and mental injury resulting in the Plaintiff's severe physical pain and suffering, severe emotional, and mental injury and disturbance, as well as severe embarrassment, and severe humiliation and therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00 plus attorney's fees, plus costs for this the thirteenth cause of action.


## AS FOR A FOURTEENTH CAUSE OF ACTION

**Defamation (Slander per se) as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD; MORRIS AND PHYLLIS FRIEDMAN.**

197.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

198.    Upon information and belief, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES without probable cause or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff in order to illegally evict the Plaintiff without due process of law from his father's rented apartment because of his physical and mental disabilities.

199.    Upon information and belief, the Defendant(s) initiated such proceedings by freely, knowingly, intentionally or negligently or recklessly but voluntarily providing false defamatory incriminating statements and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010, which held the Plaintiff up to hatred, ridicule, contempt, sworn and false arrest.  Pursuant to CPLR 3016 (a) upon information and belief, the defendants defamatory words were as follows: Upon information and belief, the Defendant(s) told the Police that "the Plaintiff was acting out, and abusing his elderly father." This statement falsely accuses the Plaintiff of a very serious crime which is "slander per se."

200.    Upon information and belief, the Defendant(s) knowingly and voluntarily provided false defamatory statements and information about the Plaintiffs to the Police and by affirmative direction, persuasion and requests to the Police procured the unlawful arrest, detention and involuntary commitment of the Plaintiff in the absence of reasonable suspicion, probable cause to make an arrest or justify involuntary detention resulting in involuntary psychiatric commitment of the Plaintiff.

201.    Upon information and belief, the Plaintiff was taken into custody without legal Authority or probable cause to arrest the Plaintiff based on the Defendant(s) knowingly providing false defamatory information to the Police about the Plaintiff and by affirmative direction, persuasion and requests to the Police which then asserted legal power to procure the unlawful restraint and confinement of which the Plaintiff was fully aware and against the Plaintiff's will.

202.    At which time, the Police proceeded to unlawfully arrest, detain, confine and eventually based upon false information provided by the Defendant to the Police which the Police then conveyed to Coney Island Hospital staff which then proximately caused Coney Island Hospital's staff to involuntary commit the Plaintiff in the absence of a reasonable chance of prevailing or probable cause to make an arrest or involuntary detention.  Upon information and belief, all proceedings were terminated in the Plaintiff's favor on the merits.

203.    Upon information and belief, the Defendant(s) acting with reckless disregard for the truth flagrantly with a very high degree of intrusiveness and conduct that the reasonable person would consider outrageous publicly depicted the Plaintiff in a highly objectionable defamatory, slanderous statements to the Plaintiff's father, the and

the police, which held the plaintiff up to hatred, ridicule, contempt, sworn and false

arrest.

204.    Upon information and belief, as a result of the Defendant's publicized

defamatory statements about to Plaintiff, the Plaintiff was held up to hatred, ridicule,

contempt, sworn and false arrest by Police which proximately caused the Plaintiff severe

physical pain and suffering, severe emotional, and mental injury and disturbance, as well

as severe embarrassment, and severe humiliation and therefore, the Plaintiff respectfully

requests an award in the amount of $10,000,000.00 plus attorney's fees, plus costs for

this the fourteenth cause of action.


## AS FOR A FIFTEENTH CAUSE OF ACTION


### Defamation (Slander per quod) as to SELF HELP COMMUNITY SERVICES; AND SOCIAL WORKERS: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI; AND THE UNITED JEWISH APPEAL; NEW YORK CITY ADULT PROTECTIVE SERVICES; APS WORKERS: BRENDA PERRY, WILLIAM TAIWO; CITY OF NEW YORK, NYPD, 7 UNIDENTIFIED NEW YORK CITY POLICE OFFICERS FROM THE 62ND PRECINCT, 2 UNIDENTIFIED NYC EMS EMTS; CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD; MORRIS AND PHYLLIS FRIEDMAN.

205.    The Plaintiff realleges 1-99 the allegations contained in the Verified

Complaint, as if fully set forth herein.

206.    Upon information and belief, all of the herein named Defendants including

but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially

STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF

HELP COMMUNUTY SERVICES without probable cause or proper legal Authority to

sanction an arrest, maliciously initiated, procured the initiation of, and took an active part in the initiation of criminal and/or civil proceedings against the Plaintiff in order to illegally evict the Plaintiff without due process of law from his father's rented apartment because of his physical and mental disabilities.

207.    Upon information and belief, the Defendant(s) initiated such proceedings by intentionally or negligently or recklessly, but freely, knowingly and voluntarily with malice providing false defamatory incriminating statements and information about the Plaintiff and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17, 2010 Which held the plaintiff up to hatred, ridicule, contempt, sworn and proximately caused the Police to unlawful falsely arrest the Plaintiff.  Pursuant to CPLR 3016 (a) upon information and belief, the Defendant's defamatory words were as follows: The Defendant(s) told the Police that "the Plaintiff was acting out, and committing the very serious crime of abusing his elderly father."


208.    Upon information and belief, the Defendant(s) then allowed these same false defamatory incriminating statements about the Plaintiff to be relayed to responding officers which was a determining factor in the officer's decision to make the arrest of Plaintiff.


209.    Upon information and belief, the Defendant(s) intentionally or negligently or recklessly, but freely, knowingly and voluntarily provided false defamatory statements and information about the Plaintiff to the Police and then  by affirmative direction, persuasion and requests to the Police procured the unlawful false arrest, false detention

and unlawful false involuntary psychiatric commitment of the Plaintiff in the absence of reasonable suspicion, probable cause to make an arrest or to justify involuntary detention resulting in involuntary psychiatric commitment of the Plaintiff.

210.    Upon information and belief, the Defendant's defamatory language about the Plaintiff, both written, and oral became defamatory by virtue of the extrinsic facts that existed at the time the words were written and spoken. The Defendant(s) are liable to the plaintiff for reasonable inferences drawn from the words, whether the consequences were foreseen or not.

211.    In this case, extrinsic facts exist (not intrinsic, as where the statement is defamatory on its face), which convert an otherwise innocent statement into defamatory libel, therefore the Plaintiff pleads: (a) colloquium: upon information and belief, the Defendant(s) initiated such proceedings by freely, knowingly, intentionally, or negligently or recklessly but voluntarily with malice providing false defamatory incriminating information and statements about the Plaintiff and false medical and mental health information about the Plaintiff to the Police in violation of HIPPA via a 911 call dated March 17 2010, which proximately held the Plaintiff up to unlawful false arrest, false detention, false confinement, false imprisonment, and false involuntary psychiatric commitment and forced involuntary drugging, and malicious prosecution, hatred, ridicule, contempt, and sworn.

212.    Pursuant to CPLR 3016 (a) upon information and belief, the Defendant's defamatory words were as follows: Upon information and belief, the Defendant(s) told the Police that "the Plaintiff was acting out, and committing the very serious crime of abusing his elderly father."

213.    In this case, extrinsic facts exist (not intrinsic, as where the statement is defamatory on its face), which convert an otherwise innocent statement into defamatory libel, therefore the Plaintiff pleads: (b) inducement: upon information and belief, the Defendant(s) initiated such proceedings by freely, knowingly, intentionally, or negligently or recklessly but voluntarily with malice providing false defamatory incriminating information and statements about the Plaintiff and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010, which proximately held the plaintiff up to unlawful false arrest, false detention, false confinement, false imprisonment, and false involuntary psychiatric commitment, and malicious prosecution, hatred, ridicule, contempt, and sworn.

214.    Pursuant to CPLR 3016 (a) and the Plaintiff's pleading requirement of "illuminating inducement," upon information and belief, the Defendant's defamatory words were as follows: the Defendant(s) told the Police, upon information and belief, that "the Plaintiff was acting out, and committing the very serious crime of abusing his elderly father."

215.    Upon information and belief, the Defendant(s) then allowed those same false defamatory incriminating statements about the Plaintiff to be relayed to responding officers which was a determining factor in the officer's decision to make an arrest of Plaintiff.

216.    In this case, extrinsic facts exist (not intrinsic, as where the statement is defamatory on its face), which convert an otherwise innocent statement into defamatory libel, therefore the Plaintiff pleads: (c) innuendo: upon information and belief, the Defendant(s) initiated such proceedings by freely, knowingly, intentionally, or negligently or recklessly but voluntarily with malice providing false defamatory incriminating information and statements about the Plaintiff and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010, which proximately held the plaintiff up to unlawful false arrest, false detention, false confinement, false imprisonment, and false involuntary psychiatric commitment, and malicious prosecution, hatred, ridicule, contempt, and sworn.

217.    Pursuant to CPLR 3016 (a) upon information and belief, the Defendant's defamatory words were as follows: Upon information and belief, the Defendant(s) told the Police that "the Plaintiff was acting out, and committing the very serious crime of abusing his elderly father."

218.    Upon information and belief, the Defendant(s) acting with reckless disregard for the truth flagrantly with a very high degree of intrusiveness and conduct that the reasonable person would consider outrageous publicly depicted the Plaintiff in a highly objectionable defamatory, slanderous statements to the Defendant's buildings super, the Plaintiff's father, the Plaintiffs father's neighbors on the day in question, and to the police, which held the plaintiff up to hatred, ridicule, contempt, sworn and false arrest.

219.   Upon information and belief, the Police then proceeded to unlawfully arrest, detain, confine and eventually based upon false information provided by the Defendant(s) to the Police which was then conveyed by the Police to Coney Island Hospital's staff proximately caused Coney Island Hospital staff to involuntary psychiatrically commit the Plaintiff in the absence of a due process, equal protection under the law, reasonable suspicion or probable cause to make an arrest or  to justify involuntary detention resulting in involuntary psychiatric commitment of the Plaintiff into Coney Island Hospital's Psychiatric Ward.

220.   Upon information and belief all proceedings were terminated in the Plaintiff's favor on the merits.

221.   In this case, extrinsic facts exist (not intrinsic, as where the statement is defamatory on its face), which convert an otherwise innocent statement into defamatory libel, therefore the Plaintiff pleads that: (d) Special damages need not be proven in this case of libel per quod because, the Defendant(s) have committed slander per se against the Plaintiff, by falsely accusing the Plaintiff of a serious crime of which was completely false and of which the Plaintiff was never formally charged with by Police, which proximately held the Plaintiff up to unlawful false arrest, false detention false confinement, false imprisonment, and false involuntary psychiatric commitment, and malicious prosecution, hatred, ridicule, contempt, and sworn.

222.   Pursuant to CPLR 3016 (a) upon information and belief, the Defendant's defamatory words were as follows: Upon information and belief, the Defendant(s) told the Police that "the Plaintiff was acting crazy, and committing the very serious crime of abusing his elderly father."

223.     Upon information and belief, all proceedings were terminated in the Plaintiff's favor on the merits.

224.     Upon information and belief, as a result of the Defendant's publicized defamatory statements about to Plaintiff, the Plaintiff was held up to hatred, ridicule, contempt, and sworn which proximately caused the Plaintiff severe physical pain and suffering, severe emotional, and mental injury and disturbance, as well as severe embarrassment, and severe humiliation and therefore, the Plaintiff respectfully requests an award in the amount of $5,000,000.00, plus attorney's fees, plus punitive damages, plus costs for this the fifteenth cause of action.

## AS FOR A SIXTEENTH CAUSE OF ACTION

### RESPONDEAT SUPERIOR as to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; CITY OF NEW YORK, NYPD, THE 62ND PRECINCT, NYC EMS EMTS; CONEY ISLAND HOSPITAL

225.     The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

226.     In this case all of the above named employer Defendants named herein including but not limited to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; THE 62ND PRECINCT, NYC EMS EMTS; CONEY ISLAND HOSPITAL are vicariously liable under doctrine of *respondeat superior* for the malfeasant and non-feasant acts of the above named employees including but not limited to SELF HELP

employees: STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN,

STEPHANIE ZYLBERBERG, MELISSA GARDONYI; and NEW YORK CITY

ADULT PROTECTIVE SERVICES; APS social workers: BRENDA PERRY,

WILLIAM TAIWO;  and NEW YORK CITY POLICE OFFICERS FROM THE 62ND

PRECINCT 7 UNIDENTIFIED NYC POLICE OFFICERS; and NYC EMS 2

UNIDENTIFIED NYC EMS EMTS; and CONEY ISLAND HOSPITAL AND STAFF:

JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE

WINSLOW, PHD because all torts committed by these employee Defendants were

committed within the scope of their employment and the Existence of master-servant

relationship existed at all times during the commission of all torts committed described

herein. The named employers had absolute ability to control and direct their servant

employees, but failed to control their employees at all times. All named Defendant

employees possessed apparent authority at all times during the commission of all torts

committed.

227.    All of the malfeasant and non feasant acts committed by the above named

Defendant employees were committed within the scope of employment or in furtherance

of the employer's business and purpose. The above named employers failed to exercise,

directly or indirectly, any degree of control over its employee's and its duties.

228.    The employee's negligent, willful, reckless, intentional torts and criminal

acts were foreseeable and in the furtherance generally of the employer's business; and the

acts were of such a nature as to have been within the reasonable contemplation of the

employer; and the nature, circumstances and stresses of the job provoked or made more

probable likelihood that employee could react with reckless or intentional conduct in furthering employer's business.

229.   In this case all of the named employee's acts including but not limited to numerous malfeasant acts were ratified and order and approved by her employer SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, in this case there is no question that STEPHANIE HAIK's malfeasant acts toward the Plaintiff were totally and completely ratified, ordered and approved by SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, SELF HELP the employer in this case and SELF HELP s' Director, Elisabeth Schneider, and SELF HELP s' Social Worker Supervisor Svetlana Gitman were totally, fully and completely aware at all times of its' employee social worker, STEPHANIE HAIK's malfeasant actions toward the Plaintiff, and the SELF HELP Director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman actually ratified, ordered and approved of all of its' employee's malfeasant acts towards to the Plaintiff.

230.   In addition upon information and belief, the Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

231.   In this case the employer APS failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

232.     APS breached its duty to the Plaintiff when it negligently hired, supervised and retained Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES.

233.     In this case the tortfeasors BRENDA PERRY and WILLIAM TAIWO and defendant NEW YORK CITY ADULT PROTECTIVE SERVICES were in an employee-employer relationship; and (2) employer NEW YORK CITY ADULT PROTECTIVE SERVICES knew or should have known of employee's Senior Supervisor BRENDA PERRY s' and WILLIAM TAIWO propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer APS s' premises and with the employer's chattels.

234.     In addition upon information and belief, the Defendants, NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT, and 7 UNIDENTIFIED OFFICIERS from the 62ND PRECINCT, NYC, as individuals and in their official capacity as NYC Police Officers employed by the, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, a governmental agency, , owed the Plaintiff a duty of reasonable care towards others.

235.     In this case the employer NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

236.     NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT breached its duty to the Plaintiff when it negligently hired, supervised and retained

Defendants, 7 UNIDENTIFIED OFFICERS, both as individuals and in their official

capacity as NYC Police Officers employed by the, NEW YORKCITY POLICE

DEPARTMENT 62ND PRECINCT, a governmental agency.

237.    In this case the tortfeasors the 7 UNIDENTIFIED OFFICERS and

defendant, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, were in an

employee-employer relationship; and (2) employer, NEW YORKCITY POLICE

DEPARTMENT 62ND PRECINCT, knew or should have known of employee's propensity

for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort

was committed on the employer premises and with the employer's chattels.

238.    In addition upon information and belief, the Defendants, NEW

YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT, and 7 UNIDENTIFIED

OFFICIERS from the 62ND PRECINCT, NYC, as individuals and in their official capacity

as NYC Police Officers employed by the, NEW YORKCITY POLICE DEPARTMENT

62ND PRECINCT, a governmental agency, , owed the Plaintiff a duty of reasonable care

towards others.

239.    In this case the employer NEW YORKCITY POLICE DEPARTMENT,

THE 62ND PRECINCT failed to investigate its' prospective employees notwithstanding

knowledge of facts that would lead a reasonably prudent person to investigate these

prospective employees.

240.    NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT

breached its duty to the Plaintiff when it negligently hired, supervised and retained

Defendants, 7 UNIDENTIFIED OFFICERS, both as individuals and in their official

capacity as NYC Police Officers employed by the, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, a governmental agency.

241.    In this case the tortfeasors the 7 UNIDENTIFIED OFFICERS and defendant, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, were in an employee-employer relationship; and (2) employer, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, knew or should have known of employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer premises and with the employer's chattels.

242.    In this case, the Defendants, the NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS OF THE 62ND PRECINCT, and 2 UNIDENTIFIED EMTS OFFICIERS, as individuals and in their official capacity as NYC EMTS employed by the, NEW YORKCITY EMERGENCY MEDICAL SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

243.    In this case the employer NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

244.    NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS breached its duty to the Plaintiff when it negligently hired, supervised and retained Defendants above named EMTS officers employed by NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS.

245.    In this case the tortfeasors 2 UNIDENTIFIED EMTS OFFICERS from the NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS were in an employee-

employer relationship; and (2) employer NEW YORKCITY EMERGENCY MEDICAL

SERVICES EMS knew or should have known of its employee's propensity for the

conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was

committed on the employer premises and with the employer's chattels.

246.    The Plaintiff also realleges the allegations contained in the Verified

Complaint, as if fully set forth herein.

247.    Upon information and belief, the Defendants, CONEY ISLAND

HOSPITAL STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON,

M.D., LANCE WINSLOW, PHD, all individuals and hospital staff in their official

capacities employed by CONEY ISLAND HOSPITAL, a New York City owned hospital

and governmental entity, owed the Plaintiff a duty of reasonable care towards others.

248.    In this case the employer CONEY ISLAND HOSPITAL failed to

investigate its' prospective employees notwithstanding knowledge of facts that would

lead a reasonably prudent person to investigate these prospective employees.

249.    CONEY ISLAND HOSPITAL breached its duty to the Plaintiff when it

negligently hired, supervised and retained Defendants, CONEY ISLAND HOSPITAL

AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D.,

LANCE WINSLOW, PHD all of which are employed by CONEY ISLAND HOSPITAL.

250.    In this case the tortfeasors JOANN ABRAMS, MARY SHAFER,

DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD BRENDA PERRY were in an

employee-employer relationship; and (2) employer CONEY ISLAND HOSPITAL knew

or should have known of employee's JOANN ABRAMS, MARY SHAFER, DEVITTE

ELVERSON, M.D., LANCE WINSLOW, PHD for the conduct which caused the injury

prior to the injury's occurrence; and, (3) the tort was committed on the employer CONEY ISLAND HOSPITAL s' premises and with the employer's chattels.

251.    Therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00, plus attorney's fees, plus costs for this the sixteenth cause of action.

## AS FOR A SEVENTEENTH CAUSE OF ACTION

### Negligent Hiring as to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; CITY OF NEW YORK, NYPD, THE 62ND PRECINCT, NYC EMS EMTS; CONEY ISLAND HOSPITAL

252.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

253.    Upon information and belief, the Defendant, STEPHANIE HAIK, an individual social worker and SELF HELP COMMUNITY SERVICES, a not for profit, owed the Plaintiff a duty of reasonable care towards others.

254.    In this case the tortfeasors STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI and defendant SELF HELP COMMUNITY SERVICES were in an employee-employer relationship; and (2) that employer SELF HELP COMMUNITY SERVICES director ELISABETH SCHNEIDER and social worker supervisor SVETLANA GITMAN knew or should have known of employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer SELF HELP 's premises and with the employer's chattels.

255.    In this case the employer SELF HELP failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

256.    SELF HELP COMMUNITY SERVICES breached its duty to the Plaintiff when it negligently hired, supervised and retained STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, and MELISSA GARDON.

257.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

258.    Upon information and belief, the Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

259.    In this case the employer APS failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

260.    APS breached its duty to the Plaintiff when it negligently hired, supervised and retained Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES.

261.    In this case the tortfeasors BRENDA PERRY and WILLIAM TAIWO and defendant NEW YORK CITY ADULT PROTECTIVE SERVICES were in an employee-employer relationship; and (2) employer NEW YORK CITY ADULT PROTECTIVE

SERVICES knew or should have known of employee's Senior Supervisor BRENDA

PERRY s' and WILLIAM TAIWO propensity for the conduct which caused the injury

prior to the injury's occurrence; and, (3) the tort was committed on the employer APS s'

premises and with the employer's chattels.

262.    The Plaintiff also realleges the allegations contained in the Verified

Complaint, as if fully set forth herein.

263.    In this case, the Defendants, the NEW YORKCITY POLICE

DEPARTMENT, THE 62ND PRECINCT, and 7 UNIDENTIFIED OFFICIERS from the

62ND PRECINCT, NYC, as individuals and in their official capacity as NYC Police

Officers employed by the, NEW YORKCITY POLICE DEPARTMENT 62ND

PRECINCT, a governmental agency, owed the Plaintiff a duty of reasonable care towards

others.

264.    In this case the employer NEW YORKCITY POLICE DEPARTMENT

62ND PRECINCT failed to investigate its' prospective employees notwithstanding

knowledge of facts that would lead a reasonably prudent person to investigate these

prospective employees.

265.    NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT breached

its duty to the Plaintiff when it negligently hired, supervised and retained Defendants

above named officers employed by NEW YORKCITY POLICE DEPARTMENT 62ND

PRECINCT.

266.    In this case the tortfeasors 7 UNIDENTIFIED OFFICERS from the NEW

YORKCITY POLICE DEPARTMENT 62ND PRECINCT were in an employee-employer

relationship; and (2) employer NEW YORKCITY POLICE DEPARTMENT 62ND

PRECINCT knew or should have known of its employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer premises and with the employer's chattels.

267.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

278.    In this case, the Defendants, the NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS OF THE 62ND PRECINCT, and 2 UNIDENTIFIED EMTS OFFICERS, as individuals and in their official capacity as NYC EMTS employed by the, NEW YORKCITY EMERGENCY MEDICAL SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

269.    In this case the employer NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

270.    NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS breached its duty to the Plaintiff when it negligently hired, supervised and retained Defendants above named EMTS officers employed by NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS.

271.    In this case the tortfeasors 2 UNIDENTIFIED EMTS OFFICERS from the NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS were in an employee-employer relationship; and (2) employer NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS knew or should have known of its employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was

committed on the employer premises and with the employer's chattels.

272.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

273.    Upon information and belief, the Defendants, CONEY ISLAND HOSPITAL STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD, all individuals and hospital staff in their official capacities employed by CONEY ISLAND HOSPITAL, a New York City owned hospital and governmental entity, owed the Plaintiff a duty of reasonable care towards others.

274.    In this case the employer CONEY ISLAND HOSPITAL failed to investigate its' prospective employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these prospective employees.

275.    CONEY ISLAND HOSPITAL breached its duty to the Plaintiff when it negligently hired, supervised and retained Defendants, CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD all of which are employed by CONEY ISLAND HOSPITAL.

276.    In this case the tortfeasors JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD BRENDA PERRY were in an employee-employer relationship; and (2) employer CONEY ISLAND HOSPITAL knew or should have known of employee's JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer CONEY ISLAND HOSPITAL s' premises and with the employer's chattels.

277. Upon information and belief, the Defendant, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES are liable to the Plaintiff for malfeasance negligence by the Defendant's failure to exercise the standard of care that an ordinary reasonably prudent person would have exercised in a similar situation.

278. Upon information and belief, in this case, the Defendant's liability for malfeasance negligence does not depend on a special relationship but rather arises from a broad duty to act reasonably to avoid causing harm to others.

279. Upon information and belief, the Defendant's duty of reasonable care owed to the Plaintiff arose out of the Defendant's malfeasance or out of the Defendant's affirmative act, of which the Defendant(s) breached its duty of care to the Plaintiff, to not cause harm to others.

180. Upon information and belief, the Defendant(s) acted with malfeasance when the Defendant, upon information and belief, without probable cause or proper legal Authority to sanction an arrest of the Plaintiff, negligently initiated, procured the initiation of, and took an active part in the initiation of criminal or civil proceedings which resulted in civil arrest and involuntary psychiatric commitment of the Plaintiff, in order to illegally evict the Plaintiff from the Defendant's premises because the Plaintiff has medical and mental disabilities.

281.    Upon information and belief, the Defendant's breach of its duty owed to the Plaintiff put the Plaintiff in foreseeable risk of harm, and placed the Plaintiff in a "zone of danger" of which the Defendant's malfeasant act proximately caused the Plaintiff substantial damages of physical and mental injury.

282.    Upon information and belief, the Defendant(s) initiated such proceedings by conscious misstatement. By the Defendant(s) consciously misstating the facts to the Police in such a way as to lead the Plaintiff to a place of harm, even though the Defendant may not have, or did not intend such harm, the Defendant has acted unreasonably and is therefore liable for his use of such language by negligently providing false incriminating and false medical and mental health information about the Plaintiff to the Police via a 911 call dated March 17 2010.

283.    And then upon information and belief, on the same day, by making those same false incriminating statements about the Plaintiff to responding officers which was a determining factor in the officer's decision to make a false arrest of Plaintiff.

284.    Upon information and belief, the Defendant(s) negligently told Police that "the Plaintiff was acting crazy, and abusing his elderly father."

285.    Upon information and belief, the Defendant(s) negligently provided false information and by affirmative direction, persuasion and requests to the Police procured the unlawful arrest, detention and involuntary psychiatric commitment of the Plaintiff in the absence of reasonable suspicion, probable cause or a reasonable chance of prevailing.

286.    Upon information and belief, the Plaintiff was taken into custody without probable cause or legal Authority to arrest the Plaintiff based on the Defendant(s) negligently providing false information to the Police and then by affirmative direction, persuasion and requests to the Police which then asserted legal power to procure the unlawful arrest, restraint, confinement and imprisonment of the Plaintiff of which the Plaintiff was fully aware and was completely against the Plaintiff's will.

287.    Upon information and belief, based upon the Defendant's act of malfeasance of providing the Police with false information about the Plaintiff, the Police then proceeded to unlawfully arrest, detain, confine, imprison and which eventually lead the Police to convey that false information to the staff at Coney Island Hospital which proximately caused Coney Island Hospital staff to involuntary psychiatrically commit the Plaintiff in the absence of a psychiatric commitment hearing,  probable cause to make an arrest or involuntary detention resulting in involuntary psychiatric commitment and without any chance of prevailing against the Plaintiff.

.    288.    Upon information and belief, as a result, of the Defendant's malfeasant negligent act which breached the Defendant's duty of reasonable care owed to the Plaintiff and created foresee ably risk, placing the Plaintiff in an extreme "zone of danger" and proximately caused the Plaintiff substantial physical and mental injury resulting in the Plaintiff's severe physical pain and suffering, severe emotional, and mental injury and disturbance, as well as severe embarrassment, and severe humiliation and therefore, the Plaintiff respectfully requests an award in the amount of $5,000,000.00 plus attorney's fees, plus costs for this the thirteenth cause of action.



289.    Upon information and belief, all of the herein named Defendants including but not limited to STEPHANIE HAIK and the staff of SELF HELP but especially STEPHANIE HAIK, a private individual, and licensed social worker employed by SELF HELP COMMUNUTY SERVICES without probable cause or proper legal Authority to sanction an arrest, maliciously initiated, procured the initiation of, and took an active part

in the initiation of criminal and/or civil proceedings against the Plaintiff in order to illegally evict the Plaintiff without due process of law from his father's rented apartment because of his physical and mental disabilities.

290.    In this case all of the above named employer Defendants named herein are vicariously liable under doctrine of *respondeat superior* for the malfeasant and non-feasant acts of the above named employees because all torts committed by these employee Defendants were committed within the scope of their employment and the existence of master-servant relationship existed at all times during the commission of all torts committed described herein. The named employers and its supervisors had actual knowledge of the said malfeasant and non-feasant acts committed by its employees and had absolute ability to control and direct their servant employees, but failed to control their employees at all times. All named Defendant employees possessed apparent authority at all times during the commission of all torts committed.

291.    All of the malfeasant and non feasant acts committed by the above named Defendant employees were committed within the scope of employment or in furtherance of the employer's business and purpose. The above named employers failed to exercise, directly or indirectly, any degree of control over its employee's and its duties.

292.    The employee's negligent, willful, reckless, intentional torts and criminal acts were foreseeable and in the furtherance generally of the employer's business; and the acts were of such a nature as to have been within the reasonable contemplation of the employer; and the nature, circumstances and stresses of the job provoked or made more probable likelihood that employee could react with reckless or intentional conduct in furthering employer's business.

293.    In this case, all of the named employee's acts including but not limited to STEPHANIE HAIK's numerous malfeasant acts were ratified, order and approved by her employer SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, in this case there is no question that STEPHANIE HAIK's malfeasant acts toward the Plaintiff were totally and completely ratified, ordered and approved by SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, SELF HELP the employer in this case and SELF HELP s' Director, Elisabeth Schneider, and SELF HELP s' Social Worker Supervisor Svetlana Gitman were totally, fully and completely aware at all times of its' employee social worker, STEPHANIE HAIK's malfeasant actions toward the Plaintiff.

294.    SELF HELP Director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman actually ordered all of its' employee's malfeasant acts toward the Plaintiff.

Therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00, plus attorney's fees, plus costs for this the seventeenth cause of action.


## AS FOR A EIGHTEENTH CAUSE OF ACTION


### Negligent Supervision as to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; CITY OF NEW YORK, NYPD, THE 62ND PRECINCT, NYC EMS EMTS; CONEY ISLAND HOSPITAL


295.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

296.    Upon information and belief, the Defendant, STEPHANIE HAIK, an individual social worker and SELF HELP COMMUNITY SERVICES, a not for profit, owed the Plaintiff a duty of reasonable care towards others.

297.    In this case the tortfeasors STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI and defendant SELF HELP COMMUNITY SERVICES were in an employee-employer relationship; and (2) that employer SELF HELP COMMUNITY SERVICES director ELISABETH SCHNEIDER and social worker supervisor SVETLANA GITMAN knew or should have known of employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer SELF HELP 's premises and with the employer's chattels.

298.    In this case the employer SELF HELP failed to supervise its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to supervise these employees.

299.    SELF HELP COMMUNITY SERVICES breached its duty to the Plaintiff when it negligently supervised and retained STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, and MELISSA GARDON.

300.    In this case, all of the named employee's acts including but not limited to STEPHANIE HAIK's numerous malfeasant acts were ratified, order and approved by her employer SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, in this case there is no question that

STEPHANIE HAIK's malfeasant acts toward the Plaintiff were totally and completely ratified, ordered and approved by SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, SELF HELP the employer in this case and SELF HELP s' Director, Elisabeth Schneider, and SELF HELP s' Social Worker Supervisor Svetlana Gitman were totally, fully and completely aware at all times of its' employee social worker, STEPHANIE HAIK's malfeasant actions toward the Plaintiff.

301.    SELF HELP Director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman actually ordered or ratified all of its employee's malfeasant acts toward the Plaintiff.

302.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

303.    Upon information and belief, the Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

304.    In this case the employer APS failed to supervise its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these employees.

305.    APS breached its duty to the Plaintiff when it supervised and retained Defendants, BRENDA PERRY AND WILLIAM TAIWO, DENISE BUMBERY all individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES. DENISE BUMBERY was nonfeasant as DENISE BUMBERY failed to

investigate her referral to the Plaintiff Robert Friedman and her supervisor BRENDA PERRY failed to supervise DENISE BUMBERY.

306.    In this case the tortfeasors BRENDA PERRY and WILLIAM TAIWO and defendant NEW YORK CITY ADULT PROTECTIVE SERVICES were in an employee-employer relationship; and (2) employer NEW YORK CITY ADULT PROTECTIVE SERVICES knew or should have known of employee's Senior Supervisor BRENDA PERRY s' and WILLIAM TAIWO propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer APS s' premises and with the employer's chattels.

307.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

308.    In this case, the Defendants, the NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT, and 7 UNIDENTIFIED OFFICERS from the 62ND PRECINCT, NYC, as individuals and in their official capacity as NYC Police Officers employed by the, NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

309.    In this case the employer NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT failed supervise its employees notwithstanding knowledge of facts that would lead a reasonably prudent person to supervise these employees.

310.    NEW YORKCITY POLICE DEPARTMENT 62ND PRECINCT breached its duty to the Plaintiff when it negligently supervised and retained Defendants above

named officers employed by NEW YORKCITY POLICE DEPARTMENT 62ND

PRECINCT.

311.    In this case the tortfeasors 7 UNIDENTIFIED OFFICERS from the NEW

YORKCITY POLICE DEPARTMENT 62ND PRECINCT were in an employee-employer

relationship; and (2) employer NEW YORKCITY POLICE DEPARTMENT 62ND

PRECINCT knew or should have known of its employee's propensity for the conduct

which caused the injury prior to the injury's occurrence; and, (3) the tort was committed

on the employer premises and with the employer's chattels.

312.    The Plaintiff also realleges the allegations contained in the Verified

Complaint, as if fully set forth herein.

313.    In this case, the Defendants, the NEW YORKCITY EMERGENCY

MEDICAL SERVICES EMS OF THE 62ND PRECINCT, and 2 UNIDENTIFIED EMTS

OFFICIERS, as individuals and in their official capacity as NYC EMTS employed by

the, NEW YORKCITY EMERGENCY MEDICAL SERVICES, a governmental agency,

owed the Plaintiff a duty of reasonable care towards others.

314.    In this case the employer NEW YORKCITY EMERGENCY MEDICAL

SERVICES EMS failed to supervise its' employees notwithstanding knowledge of facts

that would lead a reasonably prudent person to supervise these employees.

315.    NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS

breached its duty to the Plaintiff when it negligently supervised and retained Defendants

above named EMTS officers employed by NEW YORKCITY EMERGENCY

MEDICAL SERVICES EMS.

316.    In this case the tortfeasors 2 UNIDENTIFIED EMTS OFFICERS from the

NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS were in an employee-employer relationship; and (2) employer NEW YORKCITY EMERGENCY MEDICAL SERVICES EMS knew or should have known of its employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer premises and with the employer's chattels.

317.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

318.    Upon information and belief, the Defendants, CONEY ISLAND HOSPITAL STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD, all individuals and hospital staff in their official capacities employed by CONEY ISLAND HOSPITAL, a New York City owned hospital and governmental entity, owed the Plaintiff a duty of reasonable care towards others.

319.    In this case the employer CONEY ISLAND HOSPITAL failed to supervise its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate these employees.

320.    CONEY ISLAND HOSPITAL breached its duty to the Plaintiff when it negligently supervised and retained Defendants, CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD all of which are employed by CONEY ISLAND HOSPITAL.

321.    In this case the tortfeasors JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD BRENDA PERRY were in an employee-employer relationship; and (2) employer CONEY ISLAND HOSPITAL knew

or should have known of employee's JOANN ABRAMS, MARY SHAFER, DEVITTE

ELVERSON, M.D., LANCE WINSLOW, PHD for the conduct which caused the injury

prior to the injury's occurrence; and, (3) the tort was committed on the employer CONEY

ISLAND HOSPITAL s' premises and with the employer's chattels.

322.    In this case all of the above named employer Defendants named herein are

vicariously liable under doctrine of *respondeat superior* for the malfeasant and non-

feasant acts of the above named employees because all torts committed by these

employee Defendants were committed within the scope of their employment and the

existence of master-servant relationship existed at all times during the commission of all

torts committed described herein. The named employers and its supervisors had actual

knowledge of the said malfeasant and non-feasant acts committed by its employees and

had absolute ability to control and direct their servant employees, but failed to control

their employees at all times. All named Defendant employees possessed apparent

authority at all times during the commission of all torts committed.

323.    All of the malfeasant and non feasant acts committed by the above named

Defendant employees were committed within the scope of employment or in furtherance

of the employer's business and purpose. The above named employers failed to exercise,

directly or indirectly, any degree of control over its employee's and its duties.

324.    The employee's negligent, willful, reckless, intentional torts and criminal

acts were foreseeable and in the furtherance generally of the employer's business; and the

acts were of such a nature as to have been within the reasonable contemplation of the

employer; and the nature, circumstances and stresses of the job provoked or made more

probable likelihood that employee could react with reckless or intentional conduct in furthering employer's business.

325.    Therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00, plus attorney's fees, plus costs for this the eighteenth cause of action.

## AS FOR A NINTEENTH CAUSE OF ACTION

## Negligent Entrustment and Retention as to SELF HELP COMMUNITY SERVICES AND THE UNITED JEWISH APPEAL, et al; NEW YORK CITY ADULT PROTECTIVE SERVICES; CITY OF NEW YORK, NYPD, THE 62ND PRECINCT, NYC EMS EMTS; CONEY ISLAND HOSPITAL

326.    The Plaintiff realleges 1-99 the allegations contained in the Verified Complaint, as if fully set forth herein.

327.    Upon information and belief, the Defendant, STEPHANIE HAIK, an individual social worker and SELF HELP COMMUNITY SERVICES, a not for profit, owed the Plaintiff a duty of reasonable care towards others.

328.    In this case the tortfeasors STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, MELISSA GARDONYI and defendant SELF HELP COMMUNITY SERVICES were in an employee-employer relationship; and (2) that employer SELF HELP COMMUNITY SERVICES director ELISABETH SCHNEIDER and social worker supervisor SVETLANA GITMAN knew or should have known of employee's propensity for the

conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer SELF HELP 's premises and with the employer's chattels.

329.    In this case the employer SELF HELP retained its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to terminate these employees.

330.    SELF HELP COMMUNITY SERVICES breached its duty to the Plaintiff when it negligently failed to terminate and retained STEPHANIE HAIK, ELISABETH SCHNEIDER, SVETLANA GITMAN, STEPHANIE ZYLBERBERG, and MELISSA GARDON.

331.    In this case, all of the named employee's acts including but not limited to STEPHANIE HAIK's numerous malfeasant acts were ratified, order and approved by her employer SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, in this case there is no question that STEPHANIE HAIK's malfeasant acts toward the Plaintiff were totally and completely ratified, ordered and approved by SELF HELP director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman. Therefore, SELF HELP the employer in this case and SELF HELP s' Director, Elisabeth Schneider, and SELF HELP s' Social Worker Supervisor Svetlana Gitman were totally, fully and completely aware at all times of its' employee social worker, STEPHANIE HAIK's malfeasant actions toward the Plaintiff.

332.    SELF HELP Director, Elisabeth Schneider, and SELF HELP Social Worker Supervisor Svetlana Gitman actually ordered or ratified all of its employee's malfeasant acts toward the Plaintiff.

333.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

334.    Upon information and belief, the Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

335.    In this case the employer APS retained its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to terminate these employees.

336.    APS breached its duty to the Plaintiff when it failed to terminate and retained Defendants, BRENDA PERRY AND WILLIAM TAIWO, both individuals and social workers employed by NEW YORK CITY ADULT PROTECTIVE SERVICES.

337.    In this case the tortfeasors BRENDA PERRY and WILLIAM TAIWO and defendant NEW YORK CITY ADULT PROTECTIVE SERVICES were in an employee-employer relationship; and (2) employer NEW YORK CITY ADULT PROTECTIVE SERVICES knew or should have known of employee's Senior Supervisor BRENDA PERRY s' and WILLIAM TAIWO propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer APS s' premises and with the employer's chattels.

338.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

339.    In this case, the Defendants, the NEW YORKCITY POLICE DEPARTMENT, THE 62ND PRECINCT, and 7 UNIDENTIFIED OFFICIERS from the 62ND PRECINCT, NYC, as individuals and in their official capacity as NYC Police Officers employed by the, NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

340.    In this case the employer NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT failed terminate its employees notwithstanding knowledge of facts that would lead a reasonably prudent person to terminate these employees.

341.    NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT breached its duty to the Plaintiff when it negligently failed to terminate and retained Defendants

above named officers employed by NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT.

342.    In this case the tortfeasors 7 UNIDENTIFIED OFFICERS from the NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT were in an employee-employer relationship; and (2) employer NEW YORK CITY POLICE DEPARTMENT 62ND PRECINCT knew or should have known of its employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer premises and with the employer's chattels.

343.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

344.    In this case, the Defendants, the NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS OF THE 62ND PRECINCT, and 2 UNIDENTIFIED EMTS OFFICERS, as individuals and in their official capacity as NYC EMTS employed by the, NEW YORK CITY EMERGENCY MEDICAL SERVICES, a governmental agency, owed the Plaintiff a duty of reasonable care towards others.

345.    In this case the employer NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS failed to terminate its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to terminate these employees.

346.    NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS breached its duty to the Plaintiff when it negligently failed to terminate and retained Defendants above named EMTS officers employed by NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS.

347.    In this case the tortfeasors 2 UNIDENTIFIED EMTS OFFICERS from the

NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS were in an employee-employer relationship; and (2) employer NEW YORK CITY EMERGENCY MEDICAL SERVICES EMS knew or should have known of its employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) the tort was committed on the employer premises and with the employer's chattels.

348.    The Plaintiff also realleges the allegations contained in the Verified Complaint, as if fully set forth herein.

349.    Upon information and belief, the Defendants, CONEY ISLAND HOSPITAL STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD, all individuals and hospital staff in their official capacities employed by CONEY ISLAND HOSPITAL, a New York City owned hospital and governmental entity, owed the Plaintiff a duty of reasonable care towards others.

350.    In this case the employer CONEY ISLAND HOSPITAL failed to terminate its' employees notwithstanding knowledge of facts that would lead a reasonably prudent person to terminate these employees.

351.    CONEY ISLAND HOSPITAL breached its duty to the Plaintiff when it negligently failed to terminate and retained Defendants, CONEY ISLAND HOSPITAL AND STAFF: JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD all of which are employed by CONEY ISLAND HOSPITAL.

352.    In this case the tortfeasors JOANN ABRAMS, MARY SHAFER, DEVITTE ELVERSON, M.D., LANCE WINSLOW, PHD BRENDA PERRY were in an employee-employer relationship; and (2) employer CONEY ISLAND HOSPITAL knew

or should have known of employee's JOANN ABRAMS, MARY SHAFER, DEVITTE

ELVERSON, M.D., LANCE WINSLOW, PHD for the conduct which caused the injury

prior to the injury's occurrence; and, (3) the tort was committed on the employer CONEY

ISLAND HOSPITAL s' premises and with the employer's chattels.

353.    In this case all of the above named employer Defendants named herein are

vicariously liable under doctrine of *respondeat superior* for the malfeasant and non-

feasant acts of the above named employees because all torts committed by these

employee Defendants were committed within the scope of their employment and the

existence of master-servant relationship existed at all times during the commission of all

torts committed described herein.

354.    The named employers and its supervisors had actual knowledge of the said

malfeasant and non-feasant acts committed by its employees and had absolute ability to

control and direct their servant employees, but failed to control their employees at all

times. All named Defendant employees possessed apparent authority at all times during

the commission of all torts committed.

355.    All of the malfeasant and non feasant acts committed by the above named

Defendant employees were committed within the scope of employment or in furtherance

of the employer's business and purpose. The above named employers failed to exercise,

directly or indirectly, any degree of control over its employee's and its duties.

356.    The employee's negligent, willful, reckless, intentional torts and criminal

acts were foreseeable and in the furtherance generally of the employer's business; and the

acts were of such a nature as to have been within the reasonable contemplation of the

employer; and the nature, circumstances and stresses of the job provoked or made more

probable likelihood that employee could react with reckless or intentional conduct in furthering employer's business.

357.    Therefore, the Plaintiff respectfully requests an award in the amount of $10,000,000.00, plus attorney's fees, plus costs for this the nineteenth cause of action.

WHEREFORE, Plaintiff respectfully demands judgment in its favor and against Defendants as follows:

(a)    On the first cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit and any other relief as the court made deem just and equitable;

(b)    On the second cause of action, awarding judgment in the amount $10,000,000.00, together with attorneys fees, cost of suit and any other relief as the court made deem just and equitable;

(c )    On the third cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit and any other relief as the court made deem just and equitable;

(d)    On the fourth cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(e)    On the fifth cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(f)     On the sixth cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(g)     On the seventh cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(h)     On the eighth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(i)     On the ninth cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(j)     On the tenth cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(k)     On the eleventh cause of action, awarding judgment in the amount of $5,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(l)     On the twelfth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(m)    On the thirteenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(n)    On the fourteenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(o)    On the fifteen cause of action, awarding judgment in the amount of $10 ,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(p)    On the sixteenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(q)    On the seventeenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(r)    On the eighteenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

(s)    On the nineteenth cause of action, awarding judgment in the amount of $10,000,000.00, together with attorneys fees, cost of suit, punitive damages and any other relief as the court made deem just and equitable;

Dated: March 14, 2012
New York, NY

/s/

_____

RICHARD D. BORZOUYE
The Borzouye Law Firm
Attorney for the Plaintiff
14 Wall Street, 20th Floor
New York, NY 100005
(212) 618-1469
(bar code RB 3461)

To:

**SELF HELP COMMUNITY SERVICES/UJA
STEPHANIE HAIK, ELISABETH SCHNIEDER,
SVETLANA GITMAN, STEPHANIE ZYLBERBERG,
MELISSA GARDONYI;
1523 Avenue M,
Brooklyn, New York, 11230**

**UNITED JEWISH APPEAL, INC. (UJA)
UNITED JEWISH APPEAL (UJA) FEDERATION OF NEW YORK
UNITED JEWISH APPEAL FEDERATION OF JEWISH PHILANTHROPIES OF
NEW YORK, UNITED JEWISH APPEAL FEDERATION OF JEWISH
PHILANTHROPIES OF NEW YORK CHARITABLE FUND, L.L.C.
130 East 59th Street
New York, NY 10022**

**NEW YORK CITY HUMAN RESOURCES ADMINSTRATION
DEPARTMENT OF SOCIAL SERVICES/
ADULT PROTECTIVE SERVICES OF BROOKLYN,
BRENDA PERRY,
WILLIAM TAIWO,
DENISE BUMBERY,
16508 88TH Avenue, Jamaica,
New York 11432**

**MORRIS FRIEDMAN & PHYLLIS FRIEDMAN
67 Tall Oakes Drive,
East Brunswick, NJ 08816.**

**CITY OF NEW YORK, NYPD, C/O NYC COMPTROLLER'S OFFICE,**
**7 UNIDENTIFIED NYPD POLICE OFFICERS;**
**2 UNIDENTIFIED NYCEMS;**
**Office of Legal Affairs Claims Division,**
**125 Worth Street, Room #527,**
**New York, NY 10013**

**NEWYORK CITY HEALTH AND HOSPITAL CORPORATION**
**Office of Legal Affairs Claims Division,**
**125 Worth Street, Room #527,**
**New York, NY 10013**

**CONEY ISLAND HOSPITAL**
**JOANNE ABRAMS,**
**MARY SCHAFER,**
**DEVITTE  ELVERSON, M.D.,**
**LANCE WINSLOW, PhD.,**
**2601 Ocean Parkway,**
**Brooklyn, NY 11235**