UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBERT FRIEDMAN,

                           Plaintiff,

      -against-

SELF HELP COMMUNITY SERVICES, INC., et al.,

                           Defendants.
------------------------------------------------------------------X

**ORDER TO SHOW CAUSE, SCHEDULING ORDER & MEMORANDUM**

11-CV-3210 (NGG) (JO)

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is a motion by Defendants United Jewish Appeal, Inc.; United Jewish Appeal-Federation of Jewish Philanthropies of New York; United Jewish Appeal Federation of New York Charitable Fund LLC; and Self Help Community Services, Inc., and its employees (collectively, the "Self Help Defendants") for coercive contempt sanctions against non-party Richard Borzouye, former counsel for Plaintiff Robert Friedman (the "Second Contempt Motion"). (Apr. 26, 2018, Request to Renew Mot. for Contempt ("2d Contempt Mot.") (Dkt. 169).) Last year, following submission of the Self Help Defendants' first attempt to have the court impose contempt sanctions upon Borzouye (the "First Contempt Motion") (May 9, 2017, Appl. That Borzouye Show Cause ("1st Contempt Mot.") (Dkt. 150)), the undersigned referred this matter to Magistrate Judge James Orenstein for a report and recommendation ("R&R") (Sept. 7, 2017, Order). On May 21, 2018, Judge Orenstein issued a sua sponte R&R recommending that the court deny the Self Help Defendants' various requests for coercive sanctions. (See May 21, 2018, R&R ("R&R") (Dkt. 175).) For the following reasons, the court REJECTS the R&R and ORDERS Borzouye to SHOW CAUSE why coercive contempt sanctions, including imprisonment, should not issue against him.

1

## I. BACKGROUND

The latest chapter in this long-running case is a sad one indeed. On March 17, 2015, following a pattern of misconduct and poor performance by Borzouye in the course of his representation of Friedman, the court imposed sanctions against him pursuant to Federal Rule of Civil Procedure 11. (See Mar. 17, 2015, Mem. & Order (Dkt. 121) at 9-11, 13; Clerk's J. (Dkt. 122).) After briefing, the court ordered Borzouye to pay $20,000 to the Self Help Defendants (the "Sanctions Order"). (See Feb. 17, 2017, Mem. & Order ("Feb. 17, 2017, M&O") (Dkt. 143) at 7; Clerk's J. (Dkt. 144).) When Borzouye did not pay the sanctions despite repeated requests, the Self Help Defendants moved to hold Borzouye in contempt of court (1st Contempt Mot.) and the court ordered him to show cause why he should not be held in contempt (the "OTSC") (see Aug. 10, 2017, Order to Show Cause ("OTSC") (Dkt. 154)). Borzouye did not respond to the OTSC. (See Sept. 7, 2017, Order.) The undersigned referred this matter to Judge Orenstein, who, after Borzouye declined to appear at a mandatory status conference, announced that he would recommend that the court hold Borzouye in detention until he complied with the Sanctions Order. (See Oct. 5, 2017, Min. Entry (Dkt. 156).) At a status conference on January 25, 2018, the Self Help Defendants and Borzouye—who had, by this point, been suspended from the practice of law in New York State—announced their intention to attempt to negotiate a payment plan to satisfy Borzouye's outstanding debt. (See Jan. 25, 2018, Min. Entry (Dkt. 161); Tr. of Jan. 25, 2018, Status Conference ("Jan 25 Conf. Tr.") (Dkt. 178).) On March 13, 2018, Borzouye and the Self Help Defendants agreed to a payment schedule and stipulation of forbearance. (Stipulation & Order of Forbearance (Dkt. 167).) Judge Orenstein deemed the motion for coercive sanctions to be moot, and this story had a happy ending... almost. (See Mar. 13, 2018, Order.)

2

On April 26, 2018, the Self Help Defendants informed the court that they never received Borzouye's first payment, which was due on April 1, 2018. (2d Contempt Mot.) They reached out to Borzouye's attorney to figure out what had gone wrong, but the attorney stated that he too had not been able to reach his client to resolve this issue. (Id. at 1.) At that point, the Self Help Defendants averred that they had "done all that is reasonabl[y] possible to compel Mr. Borzouye's compliance with the orders of this Court" and renewed their request for coercive sanctions.[1] (Id. at 2.) At a status conference on May 8, 2018, Borzouye's attorney asked for "a little more time" on behalf of his client and proposed that Borzouye assign to the Self Help Defendants a $10,000 lien against his proceeds from another case. (Tr. of May 8, 2018, Status Conference ("May 8 Conf. Tr.") (Dkt. 179) 3:18-21, 6:16-7:1.) Judge Orenstein ordered the parties to try to work out an agreement and to report back to the court "by the end of the week." (Id. 8:22-23.) That Friday, however, the Self Help Defendants reported that they had "received no information" from Borzouye or his attorney concerning "the existence and value of the $10,000 lien." (Self Help Defs. May 11, 2018, Letter (Dkt. 174).) Accordingly, the Self Help Defendants reiterated their request to hold Borzouye in coercive detention. (Id.)

On May 21, 2018, Judge Orenstein issued an R&R recommending that the court deny the Self Help Defendants' request that the court issue a warrant for Borzouye's arrest. (R&R.) Although "frustrat[ed] at the inability to find a better resolution" (id. at 1), Judge Orenstein found that a civil contempt sanction would not be appropriate in this instance because "the record does not suffice to demonstrate that Borzouye's failure to pay the Self Help Defendants

---

[1] In addition to the request for Borzouye's incarceration, which the Self Help Defendants submit is "now the only efficacious remedy," they have requested, at various points in time: (1) award of the Self Help Defendants' full lodestar rate in attorneys' fees; (2) award of additional weekly sanctions until paid; (3) award of additional attorneys' fees incurred to compel Borzouye's compliance with the Sanctions Order; and (4) Borzouye's referral for possible disciplinary proceedings. (1st Contempt Mot.; Self Help Defs. Resp. to OTSC ("Defs. OTSC Resp.") (Dkt. 155); 2d Contempt Mot.; see 2d Contempt Mot. at 1 (requesting that the Court "renew" the First Contempt Motion).)

3

what he owes them has been willful" (id. at 3). Noting that the Self Help Defendants "continue to have an enforceable judgment against Borzouye," Judge Orenstein advised that they "retain the right to renew their request at any time if they learn that Borzouye has become able to pay the amount owed but fails to do so." (Id. at 4.)

The Self Help Defendants timely objected to the R&R. (Self Help Defs. Objs. to R&R ("Objs.") (Dkt. 176); see R&R at 4 ("Any objections to this Report and Recommendation must be [filed] no later than June 4, 2018.").) In particular, the Self Help Defendants object to the following:

> a) The R&R's conclusion that Borzouye has shown "contrition" and a "sincere desire to find some way to satisfy his debt";
>
> b) The R&R's conclusion that it was the [Self Help] Defendants' burden to prove that Borzouye has no assets rather than it being Borzouye's burden to prove his inability to pay the Rule 11 sanction (as modified by forbearance agreement);
>
> c) The R&R's conclusion that Borzouye must have no assets because he refused to pay even after he was warned that he could be arrested; and
>
> [d]) The R&R's recommendation that this Court deny the request to issue a warrant for Borzouye's arrest.

(Objs. at 1-2.) Borzouye did not submit a response to the Self Help Defendants' objections. See Fed. R. Civ. P. 72(b)(2) ("A party may respond to another party's objections within 14 days after being served with a copy.").

## II. LEGAL STANDARDS

In reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (internal citation omitted); see Impala v. U.S. Dep't of Justice,

4

670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision ...." (internal citation omitted)); Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the [R&R] has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks and citation omitted)). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

The district court must review de novo "those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). To obtain this de novo review, an objecting party "must point out the specific portions of the [R&R]" to which objection is made. Sleepy's LLC v. Select Comfort Wholesale Corp., 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citations omitted); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under ... Fed. R. Civ. P. 72(b)").

III. DISCUSSION

A. Notice

"Before [Borzouye] may be held in contempt, due process requires that he receive notice that he is a defendant in a contempt hearing, and that if he is to face the possibility of

5

incarceration, that he be afforded the right to counsel." Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz, No. 97-CV-4759 (SHS), 2006 WL 1643202, at *3 (S.D.N.Y. June 13, 2006); accord SerVaas Inc. v. Mills, 661 F. App'x 7, 9 (2d Cir. 2016) (summary order); see also Leser v. U.S. Bank Nat'l Ass'n, No. 09-CV-2362 (KAM), 2011 WL 1004708, at *7 (E.D.N.Y. Mar. 18, 2011) (collecting cases); Local Civ. R. 83.6(a) ("A proceeding to adjudicate a person in civil contempt . . . shall be commenced by the service of a notice of motion or order to show cause."). The court finds that the notice given to Borzouye regarding the contempt proceeding, including the possibility of incarceration, comports with the due-process requirements.

While Borzouye was still proceeding pro se, the court and the Self Help Defendants promulgated a number of documents relating to the possibility of contempt against him: the First Contempt Motion; the court's OTSC; the Self Help Defendants' response to the OTSC; Judge Orenstein's order that Borzouye needed to appear at a status conference on October 5, 2017, lest he face incarceration; and, finally, Judge Orenstein's promise that a recommendation of custodial sanctions would be forthcoming. The problem is that there is no evidence that any of these documents was served on Borzouye. The Self Help Defendants provided the court with copies of letters sent to Borzouye, but there is no proof of service that would allow the court to be certain that these documents ever reached him. See Indiv. R. I(C). While the court and Judge Orenstein sent copies of all court documents to Plaintiff, it is not true that these documents necessarily would have reached Borzouye, especially given that Borzouye was relieved as counsel to Plaintiff on March 7, 2014. (See Mar. 7, 2014, Min. Entry (Dkt. 99).) The court additionally notes that at least one document mailed to Plaintiff was returned as undeliverable. (Notice of Mail Returned as Undeliverable (Dkt. 157).) Even though Borzouye certainly seemed on notice of the possibility of contempt, including incarceration, during the January 25, 2018,

status conference (see Jan. 25 Conf. Tr. 5:3-6), the court will not rely on any events prior to this point in determining whether he has notice of the contempt proceedings, given the great stakes at issue here and the heightened need for notice.

Since January 24, 2018, however, Borzouye has been represented by counsel. (See Jan. 24, 2018, Letter (Dkt. 160).) The court considers Borzouye to have had notice of any statements by the court or parties regarding the possibility of contempt sanctions following this point, whether made during court conferences or in documents filed with the court. See Local Civ. R. 5.2(a). Borzouye thus has notice of the Second Contempt Motion, which renewed all the requests in the First Contempt Motion. In addition, at the status conference on May 8, 2018, Judge Orenstein and Borzouye's attorney engaged in a discussion of the propriety of coercive custody. (See May 8 Conf. Tr. 4:4-8 (statement of Michael E. Talassazan, attorney for Borzouye: "I think, you know, a stiff penalty of, you know, coercive custody might push the progress even further back . . . [and] I just don't see the good of throwing him in.").) Borzouye is well aware of the requested sanctions at this point in time, as well as his ability to respond in opposition, something which he has neglected to do.

All told, there is no question that Borzouye received notice of the civil contempt proceedings against him, that he was afforded the opportunity to respond to the Self Help Defendants' motion for contempt, and that he has taken advantage of his right to counsel. The court's imposition of the requested contempt sanctions would thus not violate Borzouye's right to due process.

B. Whether Borzouye Is in Contempt of Court

In denying the Self Help Defendants' motion for coercive sanctions, the R&R seems to have bypassed the question of whether Borzouye is actually in contempt of court and proceeded

7

directly to the question of what sanctions, if any, are appropriate. (See R&R at 2-4.) The court finds that it was clear error for the R&R not to examine carefully the question of whether Borzouye is in contempt of court. Cf. In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 157 (2d Cir. 2010) ("We review a finding of contempt under an abuse of discretion standard that is 'more rigorous' than usual.").

"A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). As directed by the Second Circuit, a finding of contempt must be made following a determination of whether "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quotation marks omitted). The movant bears the burden of establishing these three factors. Latino Officers Ass'n City of N.Y., Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009).

Because the R&R made no particularized findings as to any of these factors, the court will now do so. After review, the court finds that Borzouye is in contempt of court.

    1.    Whether the Court's Orders Have Been Clear and Unambiguous

"There is no dispute that the court has issued a lawful order requiring Borzouye to pay $20,000 (plus interest) to the Self Help Defendants, nor is there any dispute that Borzouye understands both the substance of the order and his obligation to comply." (R&R at 2.) The R&R does not, however, ask the essential question of whether the language of the order was sufficiently clear and unambiguous so as to permit Borzouye "to ascertain from the four corners

of the order precisely what acts are [required]." See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (quotation marks omitted).

The Self Help Defendants argue that Borzouye should be held in contempt for failure to comply with the court's February 17, 2017, order directing him to pay $20,000 to the Self Help Defendants. (1st Contempt Mot. at 2 (citing Feb. 17, 2017, M&O).) The court was direct in its command: There is nothing unclear or ambiguous about an order that states, "The court imposes a sanction of $20,000 and ORDERS Richard D. Borzouye, Plaintiff's former counsel, to pay this amount to the Self Help Defendants." (Feb. 17, 2017, M&O at 7.) Subsequently, the court ordered Borzouye "TO SHOW CAUSE in writing, by no later than August 18, 2017, why: (1) he should not be held in contempt for failing to pay the sanctions amount ordered by this court." (OTSC at 2.) It would be impossible to argue that there was any "uncertainty in the minds of those to whom [the Sanctions Order] [was] addressed"—i.e., Borzouye—regarding what was required of him. See King, 65 F.3d at 1058 (quotation marks omitted). The court's conclusion on this point is not altered by the addition of the stipulation, which, while not an order of the court, plainly set forth Borzouye's repayment obligations and was agreed to by him. (See Stipulation & Order of Forbearance.) All evidence points to a finding that the Self Help Defendants have established the first element of contempt.

    2. <u>Whether Proof of Borzouye's Noncompliance Is Clear and Convincing</u>

The R&R sets forth a number of examples of how Borzouye has defaulted on many of his obligations and "missed conference after conference." (See R&R at 2.) While these examples are good evidence that Borzouye has not complied with the Sanctions Order, it was error for the R&R not to ask whether such evidence is "clear and convincing" proof of noncompliance. Evidence is clear and convincing when it "demonstrate[s] that the thing to be proved is highly

probable or reasonably certain." Fresh Meadow Food Servs., LLC v. RB 175 Corp., 549 F. App'x 34, 35-36 (2d Cir. 2014) (summary order).

The Self Help Defendants have given the court sufficient evidence of Borzouye's noncompliance with both the Sanctions Order and the Order to Show Cause. They state that Borzouye (1) ignored two payment demands they made following issuance of the Sanctions Order, (2) failed to oppose their original contempt motion, (3) failed to respond to the OTSC, as directed by the court, (4) failed to appear for the October 5, 2017, conference, and (5) has now failed to make payments pursuant to the April 1, 2018, stipulation. (Defs. OTSC Resp. at 2; 2d Contempt Mot. at 1.) These statements are well borne out by the record, which features numerous examples of Borzouye's flouting the court's orders. Because the Self Help Defendants have shown by clear and convincing evidence that Borzouye has violated a specific provision of the Sanctions Order, see Perez v. Danbury Hosp., 347 F.3d 419, 425 (2d Cir. 2003), the court finds that they have established the second element of contempt.

        3.     Whether Borzouye Has Diligently Attempted to Comply in a Reasonable Manner

Finally, the R&R contains no discussion of whether Borzouye has diligently attempted to comply with the court's order in a reasonable manner. While this element is similar to the previous element—whether proof of an alleged contemnor's noncompliance is clear and convincing—they must be examined separately.[2]

The Self Help Defendants have submitted numerous examples not only of Borzouye's failure to comply with the court's order, but also of his complete lack of effort in complying.

---

[2] It is easy to imagine, for example, an alleged contemnor who has not made payments as required by a sanctions order, but who nevertheless should not be held in contempt because of efforts he or she has made towards securing the necessary funds. Cf. M. Geller, Ltd. v. Squillante, No. 14-CV-5673 (JFK), 2017 WL 894425, at *2 (S.D.N.Y. Mar. 6, 2017).

10

See supra Section III(A)(2). Following entry of the Sanctions Order in February 2017, he did not respond to any of the court's orders or to the Self Help Defendants' attempts at communication until Judge Orenstein scheduled a status conference in January 2018. At that point, Borzouye did not explain why he had been incommunicado or apologize for the problems caused by his continued disappearance—rather, his only statement was a letter, through his attorney, requesting an adjournment of the conference. (See Jan. 24, 2018, Letter.) At the January 25, 2018, status conference, Borzouye's attorney claimed that his client had "every intention to pay the sanction." (Jan. 25 Tr. 8:2-6.) And, although all seemed well when Borzouye offered to work out a payment plan with the Self Help Defendants (see id. 8:7-12), the fact of the matter is that he has not once communicated in writing his inability to make any payments. Offering thinly supported excuses after the fact does not show diligence; it shows disregard for the seriousness of the situation. Cf. Am. Honda Motor Co. v. V.M. Paolozzi Imports, Inc., No. 10-CV-955, 2012 WL 3822132, at *3 (N.D.N.Y. Sept. 4, 2012) (rejecting contemnors' claims of diligence because they had "submitted nothing to the Court . . . beyond conclusory assertions to support their alleged financial inability to comply").

Borzouye's alleged inability to pay the $20,000 sanction could be relevant to the diligence inquiry, see id.; however, given Borzouye's demonstrated lack of diligence since the outset of contempt proceedings, combined with his silence in response to the Self Help Defendants' objections, the court finds that the Self Help Defendants have established the third and final element of contempt.

\* \* \*

The Self Help Defendants have met their burden of establishing that Borzouye is in contempt of court. Accordingly, the court REJECTS the R&R insofar as it does not grant the

11

Self Help Defendants' request for an entry of contempt against Borzouye. The court ORDERS that Borzouye be held in contempt of court but, for reasons discussed below, holds this order in abeyance pending further proceedings. The court will now consider what sanctions are proper.

### C. What Sanctions Should Issue

"If a party is adjudged to be in civil contempt, the court must determine what sanctions are necessary to secure future compliance with its order and to compensate the complaining party for past noncompliance." Tamraz, 2006 WL 1643202, at *3. Civil contempt sanctions may be tailored either to "secure future compliance with court orders" ("coercive sanctions") or to "compensate the party that has been wronged" ("compensatory sanctions"). Paramedics, 369 F.3d at 657. "Arrest is an appropriate coercive sanction for civil contempt, so long as its purpose is not punitive but is instead to compel the contemnor to perform the required act." Tamraz, 2006 WL 1643202, at *3.

The Self Help Defendants object to Judge Orenstein's recommendation that the court not issue an order for Borzouye's arrest due to a lack of evidence that his failure to pay has been willful, as well as the factual conclusions upon which that recommendation is based; these portions of the R&R are therefore reviewed de novo. (See Objs. at 3-4.) While the R&R correctly notes that custodial sanctions may not be imposed unless the contemnor has acted willfully (R&R at 3), this is not the beginning—or, for that matter, the end—of the inquiry into the proper measure of contempt sanctions. Instead, the Second Circuit has directed courts to consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." N.Y.

State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989). It was clear error for the R&R not to do so.

### 1. Character and Magnitude of the Harm

First, the character and magnitude of the harm caused by Borzouye's continued contumacy are substantial. As this court has previously recognized, "Borzouye's misconduct was extreme" and "the Self Help Defendants incurred substantial attorneys' fees as a direct result of his actions." (Feb. 17, 2017, M&O at 6.) The court awarded the Self Help Defendants $20,000, which it stated "adequately reflects the seriousness of [his] misconduct" and hoped would "deter similar flagrant misconduct by him and others in the future." (Id. at 6-7.) Since the issuance of the Sanctions Order, the harm to the Self Help Defendants has only grown: They attest that they have "been forced to incur over $5,000 in additional attorneys' fees to obtain compliance by filing an order to show cause for contempt; filing various follow-up letters; attending two settlement conferences; and negotiating and drafting a settlement agreement." (2d Contempt Mot. at 1.) Additionally, both this court and Judge Orenstein have expended a great deal of time and judicial resources attempting to secure Borzouye's compliance; if there is some way to ensure Borzouye's compliance with the Sanctions Order, it should issue as soon as possible.

### 2. Effectiveness

Second, a coercive contempt sanction is likely to be effective—contingent, of course, upon a finding of ability to pay. At this point, there is no reason for the court to believe that Borzouye will comply with the Sanctions Order. Borzouye has delayed paying the required relief for over a year and has continued to ignore the court's orders and the Self Help Defendants' communications despite being on notice of his obligation to pay. In responding and

replying to this order, both Borzouye and the Self Help Defendants should advise the court of whether further financial sanctions are likely to be effective or whether a warrant for Borzouye's arrest, if permissible, is the only way to bring him into compliance with the court's orders.

3.   Ability to Pay

Finally, the court is unable to conclude at this point whether Borzouye has the ability to pay further sanctions, let alone the sanctions he already owes. While the questions of Borzouye's inability to pay the sanctions from the Sanctions Order and whether he could afford further sanctions are distinct questions,[3] the court will consider them together, for the answers are likely to be the same.

Unlike with the other two prongs of the Terry test, the R&R did consider whether Borzouye has the ability to pay the sanctions that have been levied against him. (R&R at 3-4.) The R&R first found that the Self Help Defendants "have not adduced any proof" that "Borzouye has assets beyond those he described." (Id. at 3.) Additionally, even if Borzouye were hiding assets from the court, the R&R assumed that he would have revealed them by this point given "the very explicit warnings . . . that continued non-compliance would result in incarceration." (Id.) The R&R concluded that "arresting and detaining Borzouye would be an impermissibly punitive sanction rather than a properly coercive one." (Id.) The Self Help Defendants submit that "the R&R has impermissibly reversed the burden of proof" as to Borzouye's inability to pay the sanction. (Objs. at 3.) They claim that the R&R's finding of

---

[3] In order for the court to impose monetary contempt sanctions, whether compensatory or coercive, it must conclude that the contemnor has the ability to pay additional sanctions. See Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) ("[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt."). On the other hand, while the court need not determine whether the contemnor has the ability to pay further sanctions if it wants to issue a warrant for the contemnor's arrest, such an order is only proper if the court finds that the contemnor's refusal to pay previously ordered sanctions does not stem from the contemnor's inability to pay. See Spectacular Venture, L.P. v. World Star Int'l, Inc., 927 F. Supp. 683, 685 (S.D.N.Y. 1996) ("[I]f an order of arrest would be likely to produce the desired result, the Court would issue it.").

14

Borzouye's inability to pay was thus in error because "Borzouye has not even attempted to meet" his burden of proof. (Id. at 4-5.)

First, the R&R erred in faulting the Self Help Defendants for "not adduc[ing] any proof" that "Borzouye has assets beyond those he describes." (See R&R at 3.) As the alleged contemnor, Borzouye "bears the burden of producing evidence of his inability to comply." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (citing, inter alia, United States v. Rylander, 460 U.S. 752, 757 (1983)). If a coercive sanction would be proper but for Borzouye's supposed inability to pay, the onus is on him to make that defense. See Yimby, Inc. v. Fedak, No. 17-CV-223 (PAC), 2017 WL 2693719, at *3 (S.D.N.Y. June 22, 2017) ("It is true that a party may defend against a contempt by showing that compliance is factually impossible, but that party bears the burden of production in raising the defense." (alterations adopted) (quotation marks omitted)). So while the movant, in arguing that coercive contempt sanctions are proper, must raise an inference of the contemnor's ability to pay, the burden must shift to the contemnor to rebut the inference. It would be unfair to expect the wronged party to produce evidence of the contemnor's inability to pay, especially if the contemnor has, as here, consistently refused to produce necessary information or respond to communications from the opposing party. The Self Help Defendants have made out the required inference but, at this point, no further facts are available. The R&R was incorrect to find for Borzouye on this point without shifting the burden to him.

Second, the R&R did not properly analyze Borzouye's supposed inability to pay the sanctions levied against him. "[I]nability to pay is a defense only when it is impossible for the contemnor to pay <u>any</u> portion of the ordered disgorgement . . . ." SEC v. Zubkis, No. 97-CV-8086 (JGK), 2003 WL 22118978, at *4 (S.D.N.Y. Sept. 11, 2003) (emphasis added). He must

15

establish his inability "clearly, plainly, and unmistakably." Huber, 51 F.3d at 10. "Conclusory statements are inadequate to carry this burden." Id. On this point the Self Help Defendants are exactly right:

> Borzouye has not submitted a single affidavit, statement of assets and liabilities, bank statement, brokerage account statement, tax return, or any other document to meet his burden of demonstrating an inability to pay the Rule 11 sanction. The only representations made on this issue were the oral hearsay statements of his attorney, Michael E. Talassazan.

(Objs. at 4.) The R&R was wrong to rely on this shallow body of evidence in concluding that Borzouye is unable to pay the $20,000 sanction. (R&R at 3.) Even if Borzouye is experiencing "significant financial hardship" (id.), that does not necessarily explain why he has so far refused to pay any of the outstanding judgment against him. The only factual arguments as to Borzouye's inability to pay come from the Self Help Defendants, who present evidence of Borzouye's "[f]amily income and assets." (Objs. at 4.) While the court takes no position on the persuasiveness of the evidence presented by the Self Help Defendants, the court notes that this is the kind of documentation with which courts must grapple before making a finding of inability to pay.[4] It may be the case that getting Borzouye to pay the outstanding sanctions against him would be like "trying to get blood from a stone" (May 8 Conf. Tr. 8:3-4), but the court must receive further documentation on this point before making a conclusion either way.

    4.      Willfulness

"[I]mprisonment is an appropriate sanction for contempt of a court order directing an individual to make a particular payment." Spectacular Venture, L.P. v. World Star Int'l, Inc., 927 F. Supp. 683, 685 (S.D.N.Y. 1996). In order to imprison a contemnor to compel compliance

---

[4] And, as noted above, it is now incumbent upon Borzouye to produce evidence rebutting the inference made by the Self Help Defendants that he does have the ability to pay a portion of the sanctions against him.

with the court's orders, the court must find that the contemnor's disobedience is willful. See Armstrong v. Guccione, 470 F.3d 89, 101 (2d Cir. 2006); see also Spectacular Venture, 927 F. Supp. at 685 ("[I]f the contemnor can establish that he or she is unable to comply with the Court's order, the contempt sanction must be lifted because it ceases to have a useful coercive effect."). "Contempt is willful where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." EEOC v. Local 638, 889 F. Supp. 642, 670-71 (S.D.N.Y. 1995) (internal citation omitted), aff'd in part, rev'd in part on other grounds, 81 F.3d 1162 (2d Cir. 1996).

Judge Orenstein denied the Self Help Defendants' request that the court issue a warrant for Borzouye's arrest because of a lack of evidence that "Borzouye's failure to pay the Self Help Defendants what he owes them has been willful." (R&R at 3.) To make this finding, he relied, essentially, on two factors: Borzouye's supposed contrition; and his supposed inability to pay. The court already dealt with the Self Help Defendants' objections to the R&R's findings as to Borzouye's inability to pay; here, the court discusses the objection to the R&R's finding as to Borzouye's contrition.

The R&R's discussion of whether Borzouye "has shown contrition and an apparently sincere desire to find some way to satisfy his debt" seems to get at the fourth willfulness factor—whether the contemnor has made a good faith effort to comply with the court's order.[5] See Local 638, 889 F. Supp. at 671. The R&R does not cite any evidence in support of Borzouye's supposed contrition. (See R&R at 3-4.) On the other hand, the Self Help Defendants submit that Borzouye has demonstrated a lack of contrition by (1) defaulting on the first payment owed

---

[5] The court is not quite convinced that a contemnor's sincere contrition can save him or her from the imposition of contempt sanctions, but the court will nonetheless consider any arguments that Borzouye has on this point.

17

pursuant to the March 13, 2018, payment schedule and stipulation of forbearance, and (2) failing to provide necessary information to the Self Help Defendants about a $10,000 lien that he allegedly offered to assign as partial payment of the debt. (Objs. at 2-3.)

The court finds that more evidence is needed before a conclusion may be made as to whether Borouzye has made a good faith effort to comply with the court's orders, although the court is inclined to find that he has not. Borzouye's only expression of contrition in the record is his attorney's statement at the January 25, 2018, status conference that his client was "very, very remorseful." (Jan. 25 Tr. 6:17-18.) Before this point, Borzouye had missed various court appearances and mandatory submission deadlines. Since that point, he has missed three payment deadlines pursuant to the stipulation of forbearance. And yet, not once has he thought to express his contrition in writing to the court or the parties. Nor did he apologize at the May 8, 2018, status conference, which was held solely to discuss Borzouye's failure to make payment under the stipulation of forbearance. Borzouye's attorney has recited for the court a litany of unfortunate circumstances that have befallen Borzouye, none of which the court has any reason to doubt, but the existence of these events does not, by itself, establish Borzouye's lack of willfulness.

Before the court may impose the coercive sanction of imprisonment, it must give Borzouye a chance to show that he has made good faith efforts to comply with the deadlines in this case.[6] Additionally, as discussed above, Borzouye will be permitted to prove that he is

---

[6] While courts sometimes place the burden of proving the contemnor's willfulness on the movant, see King v. Allied Vision, Ltd., 919 F. Supp. 747, 752 (S.D.N.Y. 1996) (placing the burden for proving the contemnor's willfulness on the complaining party prior to awarding attorneys' fees), the court will consider the Self Help Defendants to have met their burden if Borzouye does not produce evidence rebutting the inference of willfulness raised by the Self Help Defendants.

18

unable to comply with the court's order (i.e., that he cannot pay the sanctions levied against him).

* * *

This saga has dragged out long enough. Following Borzouye's anticipated submission, the court will consider the appropriateness of further sanctions in ensuring the swift resolution of this matter.[7] Courts do not lightly undertake the imposition of sanctions, nor do they issue orders of contempt without full consideration of the gravity of the request. Accordingly, before Borzouye's own inaction forces the court to impose a drastic remedy, the court urges him to be promptly forthcoming with the court and the Self Help Defendants.

## IV. CONCLUSION – <u>ORDER TO SHOW CAUSE</u>

The court REJECTS the R&R (Dkt. 175) and ORDERS Borzouye to SHOW CAUSE in writing, by no later than July 6, 2018, why the court should not issue an order directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt by paying the Self Help Defendants what they are owed pursuant to the Sanctions Order. The court DIRECTS Borzouye to include in his response evidence regarding his ability to pay the Sanctions Order. The Self Help Defendants shall submit their reply, if any, by no later than July 13, 2018. The court further DIRECTS Borzouye and the Self Help Defendants to appear at a hearing before the undersigned on July 17, 2018, at 2:30 P.M., in the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Courtroom 4D South, Brooklyn, New York. The court will not consider any requests by

---

[7] As discussed above, the court cannot impose custodial or additional monetary sanctions on Borzouye without giving him one last chance to produce relevant evidence. The court would be inclined to refer Borzouye for disciplinary proceedings, except that the First Department of the New York Supreme Court, Appellate Division, has apparently already gotten there. See In re Borzouye, 73 N.Y.S.3d 61 (App. Div. 2018) (suspending Borzouye from the practice of law in New York State).

19

Borzouye for adjournment of this hearing. The court HOLDS IN ABEYANCE entry of an order of contempt against Borzouye pending the court's determination of the proper sanction, if any, for his contempt. Service of this order upon Borzouye's counsel of record by ECF shall be deemed sufficient notice. **If Borzouye does not timely respond to the order to show cause or appear at the hearing on July 17, 2018, the court will find him in contempt of court and issue a warrant for his arrest.**

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
June 27, 2018

NICHOLAS G. GARAUFIS
United States District Judge